132 F.3d 63

**UNITED STATES of America, Appellee,**

v.

**Marlon MARSHALL, Appellant.**

**No. 96–3053.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 31, 1997.

Decided Jan. 6, 1998.

As Amended on Grant of Rehearing in part March 6, 1998.

---

Robert S. Becker, Washington, DC, appointed by the court, argued the cause and filed the brief for appellant.

Michael W. Wright, Assistant United States Attorney, Washington, DC, argued the cause for appellee, with whom Eric H. Holder, Jr., United States Attorney, Washington, DC, at the time the brief was filed, John R. Fisher, Thomas J. Tourish, Jr., and M. Evan Corcoran, Assistant United States Attorneys, Washington, DC, were on the brief.

Before: SILBERMAN, SENTELLE and GARLAND, Circuit Judges.

Opinion for the court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Marlon Marshall appeals his conviction for distributing more than five grams of crack cocaine. Marshall argued to the district court that the government's disclosure of evidence during trial was untimely under Rule 16 of the Federal Rules of Criminal Procedure. On appeal, he argues that the district court abused its discretion when it declined to suppress the evidence or declare a mistrial. We conclude that the district court did not abuse its discretion, and consequently affirm Marshall's conviction.

## I. Background

### A. The Offense

The Drug Enforcement Administration ("DEA") believed Marlon Marshall was a drug dealer, and orchestrated a controlled drug transaction to catch him in the act. Under the supervision of a DEA Special Agent, a confidential informant attempted to contact Marshall by calling what the informant claimed was Marshall's pager number. Marshall returned several of these pages. During one telephone conversation, which was recorded on audiotape, Marshall agreed to sell the informant approximately 42 grams of crack for $1,350. Marshall and the informant further agreed to conduct the transaction at a McDonald's restaurant in the District of Columbia. The transaction, which was recorded on videotape, took place as planned: Marshall handed the informant a french fry box containing crack, and the informant gave him $1,350 cash in return.

At the government's request, the informant attempted to arrange another transaction with Marshall. The informant contacted Marshall again by using the same pager number. This time, Marshall agreed to sell the informant 62 grams of crack for $1,750. Marshall drove a dark-colored, four-door Buick to the designated location, but did not go through with the transaction, apparently because he noticed a DEA surveillance vehicle in the area. (At trial, a witness testified that Marshall told his companion to "put the s—— back in the car because the place is too hot for me.")

Marshall was indicted for distributing more than 5 grams of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). The district court ordered Marshall to be detained pending trial.

### B. The Trial

During voir dire examination, defense counsel announced that the defense might call Sabrina Shorter as a witness. This name was familiar to the government: when Marshall returned the informant's pages, caller identification equipment revealed that he had done so on at least one occasion from Ms. Shorter's residence. Also, before trial had commenced, the government retrieved records which revealed that Ms. Shorter had visited Marshall when he was incarcerated and awaiting trial. Significantly, the government turned over the caller identification records to the defense before trial, but did not disclose the jail visitation records.

In his opening statement, defense counsel raised a defense of misidentification. He told the jury that Marshall was not the person seen selling drugs on the videotape. He also said that the government had no evidence to link Marshall to any of the phones from which the informant's pages had been returned:

The evidence is going to show that though phone calls are placed repeatedly to a pager number, that there are no records or anything from the United States to say that that was Mr. Marshall's pager. The evidence is going to show that those phone calls were made back in response to those pages and they got phone numbers from the places where those phone calls came from. They've got this caller I.D. system so that if you get a phone call you can see who is calling you. Look at the number. The evidence is going to show that those phone calls came in from places not associated with Mr. Marshall, from homes where the people don't know Mr. Marshall, because Mr. Marshall is not the person who made those phone calls. That's what the evidence is going to show here, ladies and gentlemen. The evidence is going to show Marlon Marshall is not the person who sold the drugs on May 16th, 1994.

Marshall's lawyer also claimed that the government would offer no evidence linking Marshall to the pager number called by the informant, and asserted that the evidence would show "nothing to corroborate" Marshall's alleged involvement with drug dealing.

The first government witness to testify at trial was Frank Suarez, the DEA agent who supervised the informant who arranged the drug transactions at issue. After Agent Suarez finished testifying, the government notified the court that it wanted to introduce Marshall's previously undisclosed jail visitation records into evidence. Such records were relevant, the government explained, because they showed that Marshall knew Sabrina Shorter—this fact, of course, supported the proposition that Marshall had returned a page from Ms. Shorter's residence. Defense counsel responded that the jail visitation records should be excluded from evidence because they had not been timely disclosed as required by Federal Rule of Criminal Procedure 16. In relevant part, that rule states:

> Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, ... or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial....

Fed.R.Crim.P. 16(a)(1)(C). Also, as Marshall pointed out, the government is under a continuing duty to turn over evidence subject to disclosure under Rule 16 that it discovers before or during trial. Fed.R.Crim.P. 16(c).

The district court adjourned for a long weekend without resolving the dispute over the admissibility of the jail visitation records. During the recess, the parties filed motions addressing whether a records custodian from the District of Columbia Department of Corrections would be permitted to testify about the jail visitation records. In its motion, the government also sought to introduce additional evidence resulting from an investigation that the government had conducted during the trial: (1) pager records indicating that the pager number called by the informant was registered to Marshall; (2) the pager itself; and (3) Prince George's County, Maryland ("P.G. County") police records indicating that an officer had stopped Marshall in the same Buick that Marshall used during the second, aborted drug transaction. Marshall opposed the introduction of this additional evidence, again citing Rule 16.

The government explained how it had come to discover this additional evidence during trial. After Agent Suarez completed his testimony, the prosecutor instructed him to conduct further investigation. As a result, Agent Suarez looked "in more detail" at some of Marshall's prior arrest records in P.G. County. He discovered that Marshall had a P.G. County arrest record under a different name, and contacted the P.G. County officer who had arrested him previously. That officer confirmed that Marshall was driving the Buick when the P.G. County arrest took place, and brought the pager (which had been confiscated during that arrest) with him to court. Agent Suarez then used the serial number from the pager to obtain records from the pager company.

After the four-day adjournment, the district court ruled on the disputed evidence. The court concluded that the records should have been turned over "at least after opening

statement." However, it then held that Marshall was not prejudiced by the late disclosure of the records, and declined to exclude them. As a result of this ruling, the parties agreed to stipulate that Marshall knew Sabrina Shorter, and that she had visited him on two dates in November and December of 1995.

With respect to the P.G. County records concerning the Buick, the district court criticized the government for "sloppy police work [and] insufficient investigation," but found that its decision to conduct an additional investigation in the middle of the trial was not a product of bad faith. Accordingly, the court found no violation of Rule 16, and permitted the P.G. County officer to testify that he had stopped Marshall in the Buick. (The officer, however, did not testify that he had arrested Marshall.)

The district court excluded testimony concerning pager records that revealed that Marshall was responsible for the pager number, and excluded the pager as well. When making this ruling, the district court noted that the government had promised not to introduce the pager records in its casein-chief. Finally, the district court denied Marshall's alternative motion for a mistrial.

The jury found Marshall guilty of distributing more than five grams of crack cocaine. The district court subsequently sentenced him to 135 months of incarceration.

## II. Discussion

### A. Materiality

Rule 16(a)(1)(C) mandates disclosure of certain evidence which is (1) "material to the preparation of the defendant's defense" or (2) "intended for use by the government as evidence in chief at the trial." The district court ruled that the disputed evidence in this case was "material to the preparation of [Marshall's] defense," and thus potentially subject to disclosure under prong one of Rule 16(a)(1)(C). We agree.

The government takes issue with the district court's conclusion that the disputed evidence was "material" under Rule 16. It notes first that all of the disputed evidence—the jail visitation records, the P.G. County records, the pager records—tends to incriminate Marshall. It then reads the term "material" in Rule 16 to refer to "evidence that is favorable and helpful to a defendant's defense, not as evidence that impeaches or rebuts his defense." Govt. Br. at 35 n.15; see also id. at 22 n. 10. Stressing that the disputed evidence in this case is not "helpful" or "exculpatory," id.; the government concludes that such evidence is not subject to disclosure as "material" under Rule 16.

The plain language of Rule 16(a)(1)(C) does not support the government's interpretation. This rule covers evidence which is material "to *the preparation of* the defendant's defense." (emphasis added). The government ignores the words we have just italicized, reading the rule to refer to evidence which is "favorable or helpful to a defendant's defense." *See* Govt. Br. at 35 n.15. The rule as written does not compel the conclusion that inculpatory evidence is immune from disclosure. Inculpatory evidence, after all, is just as likely to assist in "the preparation of the defendant's defense" as exculpatory evidence.[1] In other words, it is just as important to the preparation of a defense to know its potential pitfalls as it is to know its strengths.

Take the facts of this case as an example: the government says it had no obligation under Rule 16 to disclose the jail visitation records to the defense because the records were not exculpatory. Defense counsel, flying blind, asked Agent Suarez on cross-examination if he had any information connecting Marshall to any of the returned phone calls. He received the unexpected and perhaps damaging answer that the agent "now believe[d] that ... at least one address [on the list of names connected with the returned phone calls] is in fact connected with Mr.

---

1. The Supreme Court recently clarified the meaning of the phrase "material to the preparation of the defendant's defense." The phrase "authorizes defendants to examine government documents material to the preparation of their defense against the Government's case-in-chief...." *United States v. Armstrong*, 517 U.S. 456, 463, 116 S.Ct. 1480, 1485, 134 L.Ed.2d 687 (1996).

Marshall." With the jail visitation records in hand, counsel would have known to avoid this minefield.

Additionally, we note that the discovery obligations mandated by Rule 16 "contribute[ ] to the fair and efficient administration of criminal justice by providing the defendant with enough information to make an informed decision as to plea." Fed.R.Crim.P. 16 advisory committee note to 1974 amendment. The government's interpretation of Rule 16 is at loggerheads with this policy. If the government is excused from its obligation to disclose incriminating evidence (and does not intend to introduce such evidence during its case-in-chief), the defense must make any pre-trial plea decisions without knowing the true strength of the government's evidence.

To support its reading of Rule 16, the government unpersuasively points to isolated language from our prior opinions. We have observed that the government must disclose Rule 16 evidence only if such evidence "enable[s] the defendant significantly to alter the quantum of proof in his favor." *United States v. Graham,* 83 F.3d 1466, 1474 (D.C.Cir.1996) (quoting *United States v. Caicedo–Llanos,* 960 F.2d 158, 164 n. 4 (D.C.Cir. 1992)), *cert. denied sub nom. Terrell v. United States,* — U.S. —, 117 S.Ct. 993, 136 L.Ed.2d 874 (1997). But this language does not mean that inculpatory evidence may never be material. To the contrary, a defendant in possession of such evidence may "alter the quantum of proof in his favor" in several ways: by preparing a strategy to confront the damaging evidence at trial; by conducting an investigation to attempt to discredit that evidence; or by not presenting a defense which is undercut by such evidence.

The government also reads one of our opinions as requiring evidence to be "materially exculpatory" to be subject to disclosure under Rule 16. *See* Govt. Br. at 22 n.10. The government misreads that opinion. In *United States v. Lloyd,* we said that evidence is material under Rule 16 "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." 992 F.2d 348, 351 (D.C.Cir.1993)

(internal quotation marks and citation omitted). Although we used the phrase "materially exculpatory" in *Lloyd,* 992 F.2d at 351, we did so by way of illustration, not limitation. We did not, as the government urges, articulate a rule of general application that exculpatory evidence alone is subject to Rule 16 disclosure. In any event, we see no reason why inculpatory evidence could not serve the functions mentioned in *Lloyd* as well as exculpatory evidence, and the government has not articulated any such reason.

### B. Evidence the Government Acquired During Trial

█ As we explained above, the government began a new line of investigation after its first witness had testified. That investigation bore fruit: among other things, the government discovered that Marshall had been arrested in P.G. County in the same Buick he had used during the second, aborted drug transaction in this case. Here, Marshall challenges the district court's decision to permit the P.G. County officer to testify that he had stopped Marshall in the Buick.

█ To be subject to disclosure under Rule 16(a), evidence must be "within the possession, custody or control of the government." Fed.R.Crim.P. 16(a)(1)(C). Put another way, the government cannot be required to disclose evidence that it neither possesses nor controls. *See, e.g., United States v. Pinto,* 905 F.2d 47, 50 (4th Cir. 1990). In this case, it is not disputed that the government turned over the P.G. County records to the defense as soon as it discovered them. Thus there is no violation unless the term "government" as used in Rule 16 encompasses local law enforcement offices, such as the P.G. County Police Department. There is ample authority that it does not. *See, e.g., United States v. Brazel,* 102 F.3d 1120, 1150 (11th Cir.), *cert. denied,* — U.S. —, 118 S.Ct. 79, 139 L.Ed.2d 37 (1997); *United States v. Hamilton,* 107 F.3d 499, 509 n. 5 (7th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 2528, 138 L.Ed.2d 1028 (1997). We therefore hold that the United States did not violate Rule 16 when it failed to turn over evidence it neither possessed nor controlled. *See also United States v. Cannington,* 729 F.2d 702, 712 (11th Cir.1984) ("[A] party cannot produce what it doesn't have.").

■ We hasten to add that our ruling is not an invitation for the United States to engage in gamesmanship in discovery matters. To the contrary, a prosecutor may not sandbag a defendant by "the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing his access to it in preparing his case for trial." *Brazel*, 102 F.3d at 1150 (quoting *United States v. Trevino*, 556 F.2d 1265, 1272 (5th Cir.1977)). Under such circumstances, that evidence is "plainly within [the prosecutor's] Rule 16 'control.'" *Id.* In this case, there is no evidence that the government purposely ambushed the defense when it proffered the P.G. County records during trial. Indeed, the district court specifically found that the government had not acted in bad faith, and this determination is not challenged on appeal.

We need not address the pager records and pager, which the government also uncovered in the investigation it conducted during trial: Marshall could not have been prejudiced by the discovery of these items because they were never introduced into evidence.

## C. Evidence the Government Acquired Before Trial

■ The government acknowledges that prior to trial it possessed records showing that Sabrina Shorter had visited Marshall in jail, and that it did not disclose them to the defense until after the government's first witness completed his testimony. Was the government obligated under Rule 16 to disclose the records earlier than that? Our answer is "yes."

It could be argued that even before trial commenced, the government should have realized that the jail visitation records were "material to the preparation of [Marshall's] defense" under Rule 16(a)(1)(C). It knew then that Sabrina Shorter could play a significant role in its case-in-chief; caller identification equipment revealed that one or more of the informant's calls were returned from her residence. It also could be argued that

the government knew or should have known that the jail visitation records mentioning Ms. Shorter would bear more than "some abstract logical relationship to the issues in the case." *Caicedo-Llanos*, 960 F.2d at 164 n.4 (quoting *United States v. Ross*, 511 F.2d 757, 762 (5th Cir. 1975)).[2] And, as we have discussed above, the fact that the evidence was incriminating did not relieve the government of its Rule 16 obligations.

From the government's perspective, the materiality picture came into even sharper focus during voir dire examination, when the defense identified Sabrina Shorter as a potential witness. At that point, the government knew it had records relating to a person the defense had just identified as a potential witness. That fact alone plainly triggered the government's disclosure obligations under Rule 16. The defense counsel's opening statement, telling the jury that the government would present no evidence linking Marshall to the phone numbers from which the informant's pages had been returned, shows that the disclosure came too late. The government knew the statement was not true. The jail records in its possession provided this link, yet it waited until Agent Suarez had completed his testimony to disclose the records. By waiting too long to disclose the jail visitation records, the government violated its disclosure obligations under Rule 16.

■ It does not follow, however, that the district court abused its discretion by failing to impose any sanctions as a result of the violation. The district court has wide discretion in imposing a sanction if it finds that Rule 16 has been violated. The court may grant a continuance; prohibit the violating party from introducing the evidence at issue; or "enter such other order as it deems just under the circumstances." Fed.R.Crim.P. 16(d)(2). A trial judge should impose "the least severe sanction that will accomplish the desired result—prompt and full compliance with the court's discovery orders." *United States v. Sarcinelli*, 667 F.2d 5, 7 (5th Cir. 1982); *see also United States v. Gee*, 695 F.2d 1165, 1169 (9th Cir.1983).

---

**2.** To give rise to a disclosure obligation, the evidence's materiality must, of course, be evident to a reasonable prosecutor. The prosecutor need not guess that evidence may become material as a consequence of a defendant's not-yet-revealed

strategic decisions. Nor must the prosecutor assume that the defense will make false assertions about the facts, hence making relevant contrary evidence that would not have been relevant had the defense adhered to the truth.

■ To begin, we note that although literally true, it is slightly misleading to say that the district court imposed no sanction for the government's Rule 16 violation. Because the court deferred its ruling on the admissibility of the jail records during its adjournment period, the defense received what amounted to a four-day continuance to ponder how it would confront that evidence. Ordinarily, a continuance is the preferred sanction for a discovery delay because it gives the defense time to alleviate any prejudice it may have suffered from the late disclosure. *See United States v. Euceda–Hernandez*, 768 F.2d 1307, 1312 (11th Cir.1985).

Marshall complains that a continuance was not a sufficient sanction here because the jail visitation records disproved comments he had already made to the jury in his opening statement. He says it was "extremely damaging" to his case to have his lawyer promise something in his opening statement which turned out to be false. Marshall's argument, then, amounts to this: the district court should have excluded the evidence to keep the jury from thinking that the defense had told it a lie.

■ We reject this argument. To persuade us to reverse a conviction due to the government's discovery violation, an appellant must demonstrate that the violation prejudiced his substantial rights. *United States v. McCrory*, 930 F.2d 63, 69–70 (D.C.Cir.1991), *cert. denied*, 502 U.S. 1037, 112 S.Ct. 885, 116 L.Ed.2d 788 (1992). Marshall has not done so here. Marshall's attorney may not have known that Sabrina Shorter had visited him in jail, but Marshall did. He knew that his counsel's statement— "those phone calls came in from places not associated with Mr. Marshall, from homes where the people don't know Mr. Marshall, because Mr. Marshall is not the person who made those phone calls"—was false. Thus, to the extent Marshall suffered any prejudice because the government was able to disprove this false statement, the defendant—not the government—is to blame. To the extent the government's Rule 16 violation caused Marshall any prejudice, the district court did not abuse its discretion by in effect giving the defense a continuance to regroup and reconsider its trial strategy.

Before us, Marshall argues that trial counsel told the jury that the government would not be able to link Marshall to the returned telephone calls "in reliance on [trial counsel's] reasonable belief that the government had fully complied with Rule 16." Marshall Br. at 14. But Rule 16 does not prevent the government from introducing any new evidence after a trial begins; indeed, Rule 16 itself contemplates that evidence may be disclosed "during trial." Fed.R.Crim.P. 16(c). Knowing that the government might legitimately acquire and introduce new evidence during trial, the defense knew that there was a risk in telling the jury that the government would not link Marshall to the phone numbers from which the informant's pages were returned. This fact supports our conclusion that any prejudice Marshall suffered was self-inflicted.

■ Finally, we note that although Rule 16 gives trial judges the option of suppressing evidence as a result of the government's discovery violations, such a severe sanction would seldom be appropriate where—as here—the trial court finds that the government's violation did not result from its bad faith and that a less drastic remedy (such as a continuance) will mitigate any unfair prejudice. Such a sanction would have been particularly inappropriate in this case because the effect of the disputed evidence was to disprove a statement that the defendant knew to be false. If the district court had accepted Marshall's invitation in this case to suppress the jail visitation records as a result of the government's discovery violation, that ruling would have subverted one of Rule 16's goals: "contributing to an accurate determination of the issue of guilt or innocence." Fed.R.Crim.P. 16 advisory committee note to 1974 amendment. As we have said before, "there is . . . no right to deceive a jury as to the true facts." *McCrory*, 930 F.2d at 70.

### III. Conclusion

Marshall's remaining arguments do not warrant extended discussion. For essentially the same reasons already stated, we conclude that the district court did not abuse its discretion when it denied Marshall's motion for a mistrial. We also reject as insufficiently developed Marshall's cursory arguments concerning the government's disclosure of a

surveillance report and certain tape recordings. *See* Fed. R.App. P. 28(a)(6); *United States v. Clarke,* 24 F.3d 257, 262 (D.C.Cir. 1994). Finally, our decision in *United States v. Holton,* 116 F.3d 1536, 1548 (D.C.Cir.1997), forecloses Marshall's argument ·that mandatory minimum sentences for the distribution of crack cocaine violate the equal protection clause of the Fifth Amendment.·

For the foregoing reasons, we affirm Marshall's conviction.

