Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 19, 2009        Decided April 17, 2009

No. 08-5203

UNITED STATES OF AMERICA,
APPELLEE

THE WILLIAMS COMPANIES, INC.
AND WILLIAMS POWER COMPANY INC.,
APPELLANTS

v.

SCOTT THOMPSON,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-mc-00241-RJL)

———

*Andrew S. Tulumello* argued the cause for appellants. With him on the briefs was *F. Joseph Warin*.

*Sangita K. Rao*, Attorney, U.S. Department of Justice, argued the cause for appellee United States of America. With

her on the brief were *Patty Merkamp Stemler* and *Robertson T. Park*, Attorneys. *Roy W. McLeese III* , Assistant U.S. Attorney, entered an appearance.

*Philip T. Inglima* argued the cause for appellee Scott Thompson. With him on the brief was *Ann M. Mason*.

Before: ROGERS, *Circuit Judge*, and SILBERMAN and WILLIAMS, *Senior Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: This is a third-party appeal of a discovery order in a criminal case compelling the government to produce "all materials disclosed" by the third party pursuant to its cooperation with federal investigators during a criminal investigation of the third party and others. Ultimately, the government agreed to defer prosecution of the third party. Thereafter several of its former employees, including Scott Thompson, were indicted. The district court granted Thompson's motion to compel production of documents the third party had produced to the government that would be material to the preparation of his defense. This court stayed the order of production. The third party now seeks to enforce its agreement with the government that the government would hold the documents in confidence "to the extent possible" in view of the third-party's claims of privilege. The district court granted Thompson's motion but did not independently assess which documents were material to his defense. Accordingly, we remand the case for the district court to make that assessment and to protect against the public disclosure of material documents in a manner consistent with Thompson's right to a fair trial.

**I.**

This case is part of the fallout of the California energy crisis that prompted the federal government to examine practices of certain energy companies, including The Williams Companies and its subsidiary formerly known as Williams Power Company (hereinafter collectively "WPC"). In the fall of 2002, WPC's trading practices were under investigation by the Commodity Futures Trading Commission ("CFTC"), the Department of Justice, and the Federal Energy Regulatory Commission ("FERC"). In October 2002, WPC announced that it was "conducting an independent internal review of its trading activities, including reporting of information regarding natural gas trades to energy publications." Alex Goldberg, Esq., Decl. 1, ¶2. The law firm of Gray Cary Ware & Freidenrich LLP ("Gray Cary") carried out the internal investigation. In early November 2002, WPC received a subpoena from the grand jury in the Northern District of California, demanding production of information regarding WPC's trading practices, and WPC produced some responsive documents. On November 25, 2002, CFTC issued a subpoena to WPC and by separate letter advised that WPC was failing to "fully cooperate" with the investigation by not turning over certain documents and that "full cooperation" would entail disclosing the results of WPC's internal review. Letter from Steven Ringer, Division of Enforcement, CFTC, to Edward P. Davis, Jr., Esq. and Walter F. Brown, Jr., Esq., Gray Cary (Nov. 25, 2002).

WPC began producing documents to government investigators in the spring of 2003. The documents included attorney notes from interviews of WPC employees, data analyses and reports of natural gas transaction data developed under WPC's attorneys' supervision, and presentations to prosecutors by WPC attorneys aimed at "influenc[ing] the government's charging decisions." Goldberg Decl. 3, ¶11.

Each disclosure was accompanied by a statement that the documents were privileged or that WPC was not waiving its privileges, at least as to other parties and/or other matters. For example, by letter of April 25, 2003 from its outside counsel to the Justice Department Antitrust Division, WPC stated:

> We expressly reserve and do not waive any privilege and protection with respect to any other document and any other subject matter. Further, we expressly reserve and do not waive any privilege and protection for these documents as to any other action, investigation, case, matter, or party. We understand that these [redacted] will be afforded Rule 6(e) protection under the Federal Rules of Criminal Procedure, and *to the extent possible* you will assist WPC in preserving the confidentiality of these.

Letter from Edward P. Davis, Jr., Gray Cary, to Keslie Stewart, Esq., Dep't of Justice, Antitrust Division (Apr. 25, 2003) ("Davis Letter of April 25, 2003 ") (emphasis added).[1] On July 29, 2004, the CFTC approved WPC's offer of settlement regarding the gas reporting issues, and on February 21, 2006, the Justice Department executed a Deferred Prosecution Agreement ("DPA") under which WPC agreed to "cooperate fully" with

---

[1] *See also, e.g.*, Letter from Edward P. Davis, Jr., Gray Cary, to Keslie Stewart, Esq., Dep't of Justice, et al. (Apr. 23, 2003) ("Moreover, it is also our understanding that production of these notes will not be considered a waiver of any privilege as to any party other than the United States, and will not be considered a waiver as to any other subject or issue."). See also WPC letters of May 7, 2003; July 14, 2003; and July 23, 2003. WPC has requested CFTC return all produced documents. *See, e.g.*, Letter from Edward P. Davis, Jr., Gray Cary, to Steven Ringer, Esq., CFTC (March 11, 2004). WPC states in its brief it never produced privileged material to FERC.

federal prosecutors "regarding any matter about which [it] has knowledge . . . including any investigations or prosecutions of others." DPA at 2. The DPA provided that cooperation would include not asserting the attorney-client privilege or work-product protection as to certain factual documents from the internal investigation, although WPC reserved its right to assert the privilege with respect to certain other documents. The Justice Department acknowledged that WPC's cooperation was a factor in the decision to "defer[]" criminal prosecution of WPC. *Id.* at 4-5. WPC also agreed to pay a $50,000,000 penalty to the United States Treasury.

On September 28, 2006, Thompson was indicted for conspiracy, 18 U.S.C. § 371, to commit wire fraud, *id*. § 1343, and to manipulate gas prices in violation of the Commodities Exchange Act, 7 U.S.C. § 13(a)(2), in connection with his energy trading activities while a WPC employee. Thompson filed a motion pursuant to, *inter alia, Brady v. Maryland*, 373 U.S. 83 (1963), and Federal Rule of Criminal Procedure 16(a)(1)(E)(i) to compel the United States to produce "information that is material to preparing his defense" and that was provided to the government by WPC. The United States opposed the motion, stating that WPC had preserved the protected status of the produced work product and the government had agreed to these terms in receiving the documents. WPC filed a separate miscellaneous action opposing Thompson's motion. *See* D.D.C. R. 57.6.[2] The

---

[2] D.C. District Court Criminal Rule 57.6 provides:

> Any news organization or other interested person, other than a party or a subpoenaed witness, who seeks relief relating to any aspect of the proceedings in a criminal case shall file an application for such relief in the Miscellaneous Docket of the Court. The application shall include a

district court granted Thompson's motion to compel, and denied WPC's application for relief. The district court denied a stay. Upon WPC's emergency motion for a stay, this court granted the stay and expedited the appeal.

## II.

On appeal, WPC seeks to enforce its agreement with the government to maintain the confidentiality of the documents it produced during the federal investigation of its trading activities. Specifically, WPC contends that it did not waive its work-product protection as to any other party, including Thompson, when it made a limited, one-time disclosure of documents to federal prosecutors in response to a grand jury subpoena while the target of a criminal investigation. It further contends Thompson has failed to demonstrate any need for the documents because he already has access to the source materials and witnesses on which WPC's work product is based.

## A.

As a threshold matter, this court has jurisdiction over WPC's appeal under *Perlman v. United States*, 247 U.S. 7, 13 (1918), and its progeny. Under the *Perlman* doctrine, "discovery orders addressed to disinterested nonparties are immediately appealable," *In re Sealed Case*, 141 F.3d 337, 339-40 (D.C. Cir. 1998), because "the third party generally lacks a sufficient stake in the proceeding to risk contempt by refusing

---

statement of the applicant's interest in the matter as to which relief is sought, a statement of facts and a specific prayer for relief. The application shall be served on the parties to the criminal case and shall be referred by the Clerk to the trial judge assigned to the criminal case for determination.

D.D.C. R. 57.6.

compliance" as that party is not the holder of the privilege, *In re Subpoena Duces Tecum Issued to CFTC*, 439 F.3d 740, 743 (D.C. Cir. 2006); *see also Church of Scientology of California v. United States*, 506 U.S. 9, 18 n.11 (1992); *In re Sealed Case*, 141 F.3d at 339-40.  Here, the United States is the subject of the discovery order but WPC's privileges are at stake; accordingly, the United States presumably lacks the incentive to preserve the privileges by committing contempt of court.  *See In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985).  Indeed, in its brief to this court, the United States advises that "[t]he government has already complied partly and intends to comply fully with the district court's order [to] disclos[e] the documents to defendant Thompson."  Appellee U.S. Br. at 20.  Such intent to comply favors allowing an immediate appeal under the *Perlman* doctrine.  *See In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1211 (D.C. Cir. 2004); *In re Sealed Case*, 141 F.3d at 340.  Accordingly, under the *Perlman* doctrine, the discovery order is an "immediately appealable final order," *In re Subpoena Duces Tecum Issued to CFTC*, 439 F.3d at 743.

Notwithstanding the fact that the public, the government, and Thompson all have a strong interest in ensuring a speedy trial, *see Flanagan v. United States*, 465 U.S. 259, 265 (1984), Thompson's objections to our jurisdiction are unpersuasive. According to Thompson, the *Perlman* doctrine is unavailable because contempt proceedings were available to WPC when it first turned over the documents; WPC could have refused to make disclosures to the government during its investigation of WPC, prompting a court order with which it could refuse to comply.  Hence, allowing an appeal would be unnecessary because WPC has already had a chance to assert its privilege claims.  *Cf. United States v. Ryan*, 402 U.S. 530, 533 (1971). However, for purposes of determining jurisdiction, this court accepts as true an allegation that the documents are privileged and that any privilege has not been waived.  *See In re Sealed*

*Case (Medical Records)*, 381 F.3d at 1209.  Thus the court must assume at this point that WPC has taken any and all necessary steps to preserve its privileges.  Likewise, the question whether WPC's privileges are so important that they should prevail over Thompson's constitutional rights as a criminal defendant goes to the merits of disclosure and has little to do with whether the production order is "final."   Thompson's suggestion that allowing WPC to appeal "would have the perverse effect of allowing a third party to appeal an order that neither the government nor the defendant could appeal," Appellee Thompson Br. at 26, is also flawed.  That neither party could appeal the order would show that this is effectively WPC's last chance to oppose the order and would buttress its position that any rights it has will not be vindicated unless this court reviews the order on an interlocutory basis.

Allowing an immediate appeal for WPC, even though doing so delays Thompson's criminal trial, comports with *Perlman* itself, which involved a grand jury proceeding.  Thompson's attempt to distinguish *Perlman* on the ground that it involved a constitutional challenge to the grand jury is of no moment. Allowing the appeal is consistent with the principle that privileges play an important role in the healthy functioning of the criminal justice system, *see, e.g.*, *United States v. Nobles*, 422 U.S. 225, 238 (1975).  As this court observed in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), federal courts have often allowed third parties to "assert their interests in preventing disclosure of material sought in criminal proceedings or in preventing further access to materials so disclosed," *id.* at 311 n.67.   The court's grant of an expedited appeal acknowledges the importance of avoiding undue delay of Thompson's trial.

**B.**

The work-product doctrine, recognized by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947), reflects the strong "public policy underlying the orderly prosecution and defense of legal claims." *Id*. at 510; *see also Nobles*, 422 U.S. at 236-40; *Hickman*, 329 U.S. at 514-15. The doctrine protects written materials that lawyers prepare "in anticipation of litigation," ensuring that "lawyers can prepare for litigation without fear that opponents may obtain their private notes, memoranda, correspondence, and other written materials." *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998). As the Court observed in *Hickman*:

> In performing his various duties . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. . . . This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways — aptly though roughly termed by the Circuit Court of Appeals in this case as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. . . . The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

329 U.S. at 510-11 (internal citation omitted). *See generally* Kenneth S. Broun, 1 MCCORMICK ON EVIDENCE § 96 at 433 (6th

ed. 2006); 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 26.70 (3d ed. 2009); *Developments in the Law—Discovery*, 74 HARV. L. REV. 940, 1027-46 (1961).

On appeal, the United States does not contest that the documents at issue were covered by the attorney-client and work-product privileges before production to it. The government did not take a position before the district court as to whether Williams had waived the attorney-client privilege with respect to the produced documents. This court has declined to adopt a selective waiver doctrine that would allow a party voluntarily to produce documents covered by the attorney-client privilege to one party and yet assert the privilege as a bar to production to a different party. *See In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989)*; Permian Corp. v. United States*, 665 F.2d 1214, 1219 (D.C. Cir. 1981). But, the question remains whether work-product protection has been waived. Because the work-product doctrine is designed to "promote the adversary system by safeguarding the fruits of an attorney's trial preparation from the discovery attempts of the opponent" and not, as the attorney-client privilege is designed, "to protect a confidential relationship," not all disclosures to third parties waive the protection afforded by the doctrine. *United States v. AT&T*, 642 F.2d 1285, 1299 (D.C. Cir. 1980); *see also Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 605 (D.C. Cir. 2001); *Permian Corp.*, 665 F.2d at 1219. Yet "disclosure of work product materials can waive the privilege for those materials if 'such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary.'" *Rockwell Int'l Corp.*, 235 F.3d at 605 (quoting *AT&T*, 642 F.2d at 1299). Three main factors determine whether work-product protection has been waived: "(1) 'the party claiming the privilege seeks to use it in a way that is not consistent with the purpose of the privilege'; (2) the party had no reasonable basis for believing that the disclosed materials

would be kept confidential by the [government]; and (3) waiver of the privilege in these circumstances would not trench on any policy elements now inherent in this privilege." *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1372 (D.C. Cir. 1984) (internal citation omitted).

As to the first factor, *In re Subpoenas Duces Tecum*, 738 F.2d 1367, is instructive. There, the court concluded that allowing the party (the Tesoro Company) claiming the privilege the benefits of selective waiver would not well serve the adversary system, "which spawned the need" for work-product protection. *Id.* at 1372. Moreover, the court concluded that the Securities and Exchange Commission ("SEC"), which had created a voluntary disclosure program relying on internal reviews of allegations of improper corporate payments, was an adversary of Tesoro, a company participating in the program; Tesoro's disclosure was motivated by a desire to secure lenient punishment for any wrongdoing exposed in the disclosed materials. The court reasoned that Tesoro's disclosure to the SEC was not simply disclosure to a party with common interests. For purposes of this appeal, contrary to WPC's contention, we will assume that WPC was not coerced into producing documents to the government, as the district court found, for we can reach a disposition that is not inconsistent with WPC's confidentiality claim without addressing a troubling constitutional issue. Like Tesoro, then, WPC "independently and voluntarily chose to participate in a thorough disclosure program, in return for which it received the *quid pro quo* of lenient punishment for any wrongdoing exposed in the process," *id.* Consequently, here too "[i]t would . . . be inconsistent and unfair to allow [WPC] to select according to [its] own self-interest to which adversaries [it] will allow access to the materials," *id.*

As to the second factor, whether the party had a reasonable basis for believing that the government would keep the disclosed materials confidential, the reasoning of *In re Subpoenas Duces Tecum*, 738 F.2d 1367, is not determinative. In one sense, as in that case, here there were no "common interests between transferor and transferee" to support an expectation of confidentiality, *id.* at 1372. Just as the SEC and Tesoro were adversaries, the federal investigators and WPC were adversaries. But, unlike here, there was no other solid basis for Tesoro's expectation that its produced documents would be kept confidential. *Id.* In contrast, by letters accompanying its disclosures to the government WPC expressed its desire to preserve its privileges and limit waivers. *See, e.g.*, letters *supra* note 1 and accompanying text. The government, in turn, acknowledged in opposing Thompson's motion to compel that WPC had a reasonable basis for believing that the Justice Department and the CFTC would keep its documents confidential. WPC has standing, at least at this stage, to seek enforcement of this confidentiality agreement.

Just as clearly, however, WPC has not demonstrated that disclosure of its documents to a criminal defendant under *Brady* and Rule 16 lay beyond the scope of its confidentiality agreement with the government. Thompson's indictment was an outgrowth of the criminal investigation in which WPC produced the documents at issue. WPC's expression of its expectation of confidentiality sought the commitment of the government to assist in preserving WPC's privileges only "to the extent possible." *E.g.,* Davis Letter of April 25, 2003, *supra* p. 4. In view of this phrasing, WPC's expectation of confidentiality cannot reach the disclosures grounded in the government's *Brady* obligations, which are constitutionally based, and may not reach disclosures the government would be required to make under Rule 16, which turns on a balancing of interests. *See United States v. Garcia*, 625 F.2d 162, 165 (7th Cir. 1980)

(citing *Rovario v. United States*, 353 U.S. 53, 62 (1957)); FED. R. CRIM. P. 16(d)(1).  Moreover, WPC made the disclosures pursuant to grand jury subpoena and thus the materials were disclosed with the understanding that they potentially would be used at trial.  In producing one set of documents to the government, WPC stated through independent counsel that it was "waiv[ing] the attorney work product privilege with respect to [Gray Cary's] investigation of reports to various publications that publish gas indices," Letter from Edward P. Davis, Jr., Gray Cary, to Keslie Stewart, Esq., Dep't of Justice, et al. (Apr. 23, 2003), and confirmed the privilege was waived with respect to the government's use of the documents.  In transmitting interview notes, WPC stated it was waiving its work-product privilege with respect to "this grand jury investigation by your office," and the prosecutors' "investigation of natural gas price reporting issues."  Davis Letter of April 25, 2003, *supra* p. 4. Given this evidence of the scope of the waiver under the confidentiality agreement with the government, WPC has not shown that it reasonably expected the government would guard the confidentiality of the documents despite its *Brady* and Rule 16 obligations.

As to the third factor, which turns on the public policy interests inherent in the work-product doctrine, the court concluded in *In re Subpoenas Duces Tecum,* 738 F.2d 1367*,* that if public policy favored an exception to waiver for cooperation with investigative regulatory bodies, a court is not the appropriate forum in which to craft such an exception.  *Id.* at 1375.  However, the court also noted that "the company can insist on a promise of confidentiality before disclosure to the SEC." *Id.*  Here, WPC sought confidentiality, but the assurances it secured were neither sufficiently strong nor sufficiently unqualified to prevent the government's disclosure of documents material to preparation of a criminal defense.

## C.

In granting Thompson's motion to produce, the district court ordered that the government "shall produce to defendant all materials disclosed to the Government by [WPC] pursuant to [WPC's] cooperation with the federal investigations that resulted, ultimately, in the indictment of the defendant, Scott Thompson." In the course of considering WPC's motion for a stay, the district court indicated that its ruling was based on the defendant's right to prepare a defense for trial, concluding that denial of access to the documents at issue would harm Thompson since the government has access to them. In so ruling, the district court implicitly ruled that the documents material to Thompson's defense were discoverable under *Brady* and Rule 16. This court typically reviews a discovery order for abuse of discretion. *In re Subpoenas Duces Tecum Issued to CFTC*, 439 F.3d at 743.

In *Brady*, the Supreme Court established the prosecution's affirmative duty to disclose material evidence "favorable to an accused," 373 U.S. at 87. The Court has defined "material evidence" to mean "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (internal quotation marks and citations omitted). Rule 16, in turn, requires the government to disclose, upon request, *inter alia*, statements by the defendant and documents and objects in the government's control where "the item is material to preparing the defense," FED. R. CRIM. P. 16(a)(1)(E)(i), or the government intends to use the item in its case in chief, *id.* 16(a)(1)(E)(ii). *See United States v. Marshall*, 132 F.3d 63, 67-69 (D.C. Cir. 1998); FED. R. CRIM. P. 16(a)(2), (3). At the same time, Rule 16(d)(1) provides that "for good cause" the district court may "deny, restrict, or defer discovery or inspection or grant other appropriate relief." FED. R. CRIM. P. 16(d)(1); *see also Alderman v. United States*, 394 U.S. 165,

185 (1969) (discussing former Rule 16(e), which is currently embodied in Rule 16(d)(1)); *Morgan v. Dep't of Justice*, 923 F.2d 195, 197 n.2 (D.C. Cir. 1991); *Baker v. United States*, 401 F.2d 958, 978 n.91 (D.C. Cir. 1968) (discussing former Rule 16(e)). Given that Rule 16(d)(1)'s balancing encompasses WPC's interest in the confidentiality of the documents at issue, *see Garcia*, 625 F.2d at 165, WPC has standing to protect its interest in confidentiality, albeit in a manner consistent with Thompson's right to a fair trial and the government's *Brady* and Rule 16 obligations to Thompson.

The government informed the district court on June 22, 2007 that its review of the documents at issue had not uncovered any *Brady* material and that it had not determined a witness list that would trigger *Jencks* obligations. Additionally, the government advised that its investigation had addressed an array of activities unrelated to WPC or Thompson, such that only some of the documents turned over by WPC, including witness interviews, would be relevant to Thompson's preparation of a defense. Further, the government argued that because Thompson has all the source data on which WPC based its analysis, production of the analysis itself was not required. The government had previously advised that it had found no statements by Thompson and invoked Federal Rules of Evidence 801(c) and 408 in arguing that attorney notes of interviews and reports prepared by counsel are not evidence, but hearsay and potentially evidence of compromise or offer to compromise. On June 26, 2008, following the grant of Thompson's motion to compel production, the government advised that it had located some documents it was obligated to turn over to Thompson. At a July 8, 2008 hearing, WPC, in turn, clarified that it was not suggesting the underlying factual documents necessarily should be withheld from discovery by Thompson, but only that the private attorney notes and analyses should be withheld.

The district court did not make specific findings to resolve WPC's privilege claims.  In denying WPC's request for a stay, however, the district court balanced the interests underlying the privileges against a criminal defendant's right to prepare a defense, concluding that the harm that WPC would suffer with regard to the civil litigation pending in California as a result of disclosure was "at that time" too speculative, while the harm to Thompson was real given the government's access to the documents he sought to discover.  Upon observing that work-product protection is a qualified privilege, the district court was confronted with WPC's suggestion for *in camera* document-by-document review because there was no subset of documents WPC could then identify whose release would harm it most.  WPC further argued that its attorneys' notes and analyses would not be reachable through deposition and the notes potentially constituted an admission against interest.  As Thompson points out on appeal, he had argued he had "reason to believe that [WPC's] internal investigation entailed extensive witness interviews and fact-gathering," and such documents are essential to an effective examination of witnesses called by the government or himself at trial.  Appellee Thompson Br. at 54-55.

It remains for the district court on remand to determine which of the documents at issue are material to Thompson's ability to prepare his defense, and upon identifying those documents to afford appropriate protection to WPC against public disclosure in a manner that is consistent with Thompson's right to a fair trial and the government's confidentiality agreement with WPC.  Given the scope of the confidentiality agreement, WPC cannot preclude discovery by Thompson of the documents it produced to the government as are material to Thompson's defense, but *Brady* and Rule 16 contemplate a role for the district court.  A general conclusion that a defendant has demonstrated "adequate reasons," *In re Sealed Case*, 676 F.2d

793, 809 & n.58 (D.C. Cir. 1982), for disclosure of factual work product would appear insufficient here because that showing also turns on whether "that work product contains *relevant*, nonprivileged facts," *id.* at 809 (emphasis added). Because the government's criminal investigation was far broader than WPC and its employees and did not focus on Thompson alone, discovery by Thompson must proceed in a manner that avoids a fishing expedition, *see Nobles*, 422 U.S. at 240-41, as the district court's order of production suggests. Upon remand the district court can flesh out the details as to which documents must be disclosed because material to Thompson's preparation of a defense and determine whether a protective order should be issued with respect to any of those documents. *Cf., e.g.*, *In re Sealed Case*, 121 F.3d 729, 762 (D.C. Cir. 1997) (remanding and attaching chart listing documents and privileges asserted as a sealed appendix).

Accordingly, we remand the case to the district court and do not reach WPC's contention that its production of documents was involuntary due to government coercion. Neither do we address WPC's contention that the documents at issue are entitled to protection under a common-law, federal settlement privilege, an issue that was not properly raised in the district court and thus is not properly before this court. *See In re Subpoena Duces Tecum Issued to CFTC*, 439 F.3d at 750-51.