Rogers, Circuit Judge, concurring:
I join the court's opinion and write separately regarding the government's failure to comply with Rule 16 of the Federal Rules of Criminal Procedure.
Rule 16 requires the government to produce, upon a defendant's request, "books, papers, documents, data, photographs, tangible objects, buildings or places," if the item is "within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intended to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. Pro. 16(a)(1)(E). Over time, Rule 16 has been amended to provide for broader discovery in criminal prosecutions. Adv. Comm. Note to 1993 Amendment; Adv. Comm. Note to 1966 Amendment; see also 2 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 251 (4th ed. 2018). The Supreme Court and this court have recognized that broad discovery promotes informed *802 plea decisions, minimizes unfair surprise, and helps ensure guilt is accurately determined. Wardius v. Oregon , 412 U.S. 470, 473-74, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973) ; United States v. Marshall , 132 F.3d 63, 69-70 (D.C. Cir. 1998) ; United States v. Machado-Erazo , 901 F.3d 326, 339-40 (D.C. Cir. 2018) (Rogers, J., concurring); see also Adv. Comm. Notes to 1993 and 1974 Amendments.
In determining the scope of obligations under Rule 16, this court has looked to "the plain language" of the Rule. For instance, the court held that as written the Rule does not compel the conclusion that inculpatory evidence is immune from disclosure, reasoning that "just as important to the preparation of a defense [is] to know its potential pitfalls as it is to know its strengths." Marshall , 132 F.3d at 67. Defense counsel in the instant case requested well before trial, in July 2015, that the government identify "all patients" alleged to be involved with Global Healthcare's Medicaid submissions and "false and fraudulent claims." The trial date was continued on multiple occasions in order to enable the government to complete discovery so that defense counsel could prepare for trial. Yet three weeks into the trial, just before the government rested its case-in-chief, the government disclosed for the first time a report purporting to show that 567 D.C. Medicaid beneficiaries for whom Global Healthcare had received Medicaid reimbursements did not qualify for or did not receive personal care services. A month before the trial the prosecutor had requested that Don Shearer, the Director of Health Care Operations at the D.C. Department of Health Care Finance ("DHCF"), figure out how to "quantify" the scope of the fraud by Florence and Michael Bikundi at Global Healthcare. Trial Tr. 113 (Nov. 4, 2015 AM). The prosecutor proposed to introduce the report into evidence through Mr. Shearer's testimony at trial. Defense counsel, caught unawares, objected to admission of the report, claiming that allowing the report into evidence at this point would be "unfair" sandbagging and its identification and its production were "untimely" under Rule 16. Trial Tr. 16 (Nov. 3, 2015 PM).
The district court judge acknowledged that the Assistant U.S. Attorney's timing in disclosing Mr. Shearer's report after the trial had been underway for three weeks was "not great." Id . The judge also acknowledged that the delay impaired the defense's "ability to scrutinize [the report] in terms of the beneficiaries." Id. at 110. Recognizing the difficult situation in which the prosecutor had placed the defense and the trial court, the judge proposed to delay Mr. Shearer's testimony until the next day in order to allow defense counsel the opportunity to interview him. Defense counsel objected that an overnight continuance would hardly "cure[ ] the problem," because what the defense needed was time to investigate the data and conclusions in the report. Id. at 19. Defense counsel reiterated that Florence and Michael were "being ambushed." Id. The judge ruled the report could be admitted into evidence and delayed Mr. Shearer's testimony until the next day, observing that "any testimony from Mr. Shearer is ripe fodder for cross-examination about the legitimacy of whatever conclusions can be drawn from this exhibit." Id. at 112.
Florence and Michael contend that, in response to their pretrial discovery request, the government was obligated under Rule 16 to disclose Mr. Shearer's report and its underlying data, and that "admission of the report on less than one day's notice to [them] violated their substantial rights" to mount a defense. Appellants' Br. 57. They pointed out that the government had had control over the data, which was central to the prosecution, and that the government had had access to the data in *803 preparing its case for trial. If the data had been timely disclosed to the defense, Florence and Michael maintain that they could have investigated the listed Global Healthcare clients to determine whether they stopped making D.C. Medicaid claims for legitimate reasons and thereby "undermine[d] the inference [of fraud] the government asked the jury to draw." Id.
In response, the government properly does not maintain that the report falls within the scope of the bar in Rule 16(a)(2) of discovery of internal government documents, for the defense is to be allowed to examine documents material to preparation of its defense. See United States v. Armstrong , 517 U.S. 456, 463, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). The prosecutor's pretrial efforts to obtain what he knew would be "compelling evidence" of appellants' fraud fits comfortably within the mandatory disclosure obligations of Rule 16(a)(1)(E). Trial Tr. 154 (Nov. 9, 2015 AM). Instead, the government maintains it had no disclosure obligation under Rule 16 until it received the report. When it did, it disclosed the report to the defense and the district court during trial. This is so, the government maintains, notwithstanding defense counsel's spot-on discovery request and the prosecutor's knowledge that Mr. Shearer was preparing an important report in response to his pretrial request to show the full scope of appellants' fraud, and that the report was not in hand when the trial began.
In maintaining it did not violate Rule 16, the government asserts that the data used to prepare the report was not within its control, relying on Marshall , 132 F.3d at 68. In Marshall , the prosecutor had learned during trial of a prior arrest record for the defendant from the Prince George's County, Maryland Police Department. See id. at 66. The district court judge criticized the late disclosure of the county police records, attributing it to the "sloppy police work and insufficient investigation" by the U.S. Attorney's Office. Id. at 67. But finding the decision to conduct additional investigation mid-trial was not a product of bad faith, the judge allowed testimony about the police records at trial. On appeal, this court affirmed, reasoning that the local Maryland county law enforcement agencies were not under the control of the U.S. Attorney's Office for purposes of Rule 16 discovery. Id. at 68.
The government, at best, overreads Marshall . This court may have held Rule 16 did not encompass documents that were in possession of a state law enforcement agency, see id. , but the court did not suggest in Marshall that the local police department had been centrally involved in the federal investigation and prosecution, much less been asked to prepare a report for introduction at the trial. Here, by contrast, the D.C. Medicaid data and records of Global Healthcare were at the heart of the federal government's prosecution of Florence and Michael. DHCF investigates Medicaid fraud and refers investigations to the U.S. Attorney's Offices for prosecution. In the prosecution of Florence and Michael, Mr. Shearer was also a key witness at trial. Significantly as well, unlike in Marshall , 132 F.3d at 66, the new evidence in the form of his report was not discovered during trial. On cross examination, Mr. Shearer disclosed that prior to trial the prosecutor had requested he prepare a report to "quantify the amount ... of actual fraud." Trial Tr. 113 (Nov. 4, 2015 AM). Upon producing the report at trial, the prosecutor acknowledged that it was an important part of the government's case-in-chief, telling the judge that the report was "highly relevant" and necessary "to establish the full extent of the fraud." Trial Tr. 15 (Nov. 3, 2015 PM). In closing argument, the prosecutor told the jury that the report provided "very compelling evidence that Medicaid had to pay almost $ 29,500, *804 000 for 567 people [who] ... did not qualify for or need personal care services." Trial Tr. 154 (Nov. 9, 2015 AM).
Today, the court is able to assume without deciding that the government violated Rule 16 's mandates because of the fortuitous circumstance that cross examination of Mr. Shearer diminished much of the sting of his report. Not completely, however, for the report laid out the scope of appellants' fraud in an organized form that the jury would readily comprehend. But insofar as the report did not address whether there were legitimate reasons the listed beneficiaries stopped receiving services, the district court could reasonably conclude "any testimony from Mr. Shearer is ripe fodder for cross-examination" about the conclusions to be drawn from this report. Trial Tr. 112 (Nov. 3, 2015 PM).
Of course, the fortuity of effective cross-examination to ameliorate if not neutralize the prejudice arising from the Rule 16 violations does not mean the prosecutor's pretrial request and knowledge a report was being prepared were not material to preparation of the defense. The district court judge's response at trial upon learning of the report makes this clear. Any defense counsel would want to know the report was being prepared before having it "sprung" at trial when, as any prosecutor would be aware, a district court judge would be unlikely to allow a lengthy delay of trial to afford the defense time to investigate the data and conclusions in the report. By proceeding as it did, the government defeated the aim of Rule 16 to avoid "gamesmanship." In forceful terms, this court instructed in Marshall , that "a prosecutor may not sandbag a defendant by the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing his access to it in preparing his case." 132 F.3d at 69 (quotation omitted). Regrettably, the court's instruction was prescient of what occurred in the prosecution of Florence and Michael. The U.S. Attorney's "interest ... in a criminal prosecution is not that it shall win a case, but that justice shall be done," see Berger v. United States , 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), and in prosecuting with "vigor," id. , to do so in accordance with the rules of criminal procedure, see id . In other circumstances, such conduct as occurred here would raise concerns identified by the Supreme Court and this court in view of the underlying purposes of Rule 16 that would oblige a district court judge to ensure an appropriate sanction for a violation of Rule 16.