# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 26, 2010        Decided June 29, 2010

No. 09-5171

UNITED STATES OF AMERICA,
APPELLANT

v.

DELOITTE LLP,
APPELLEE

DOW CHEMICAL COMPANY,
INTERVENOR

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-mc-00411-RJL)

---

*Judith A. Hagley*, Attorney, U.S. Department of Justice, argued the cause for appellant. With her on the briefs were *Gilbert S. Rothenberg*, Deputy Assistant Attorney General, and *Robert W. Metzler*, Attorney. *Andrew Weiner*, Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney, entered appearances.

*Hartman E. Blanchard, Jr.* argued the cause for intervenor Dow Chemical Company on behalf of appellee. With him on the brief were *Christopher P. Murphy* and *John B. Magee*. *Michael D. Warden* entered an appearance.

Before: SENTELLE, *Chief Judge*, and BROWN and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

SENTELLE, *Chief Judge*:  The United States appeals from a district court order denying its motion to compel Dow Chemical Company's independent auditor, Deloitte & Touche USA, LLP,[1] to produce three documents in connection with ongoing tax litigation between Dow and the government.  The district court ruled that all three documents were protected from discovery under the work-product doctrine.  On appeal, the government contends that one of the documents is not work product because it was prepared by Deloitte during the audit process.  In addition, while it concedes that the other two documents are work product, it argues that Dow waived work-product protection when it disclosed them to Deloitte.  We vacate the district court's decision that the document prepared by Deloitte is work product and remand for *in camera* review to determine whether it is entirely work product.  With respect to the other two documents, we affirm the district court's decision that Dow did not waive work-product protection when it disclosed them to Deloitte.

## I.  Background

This discovery dispute arises from ongoing tax litigation in the U.S. District Court for the Middle District of Louisiana.  The litigation concerns the tax treatment of two partnerships owned by Dow Chemical Company and two of its wholly-owned subsidiaries.  The first of these partnerships was Chemtech Royalty Associates, L.P. (Chemtech I); it was succeeded by Chemtech II, L.P. (Chemtech II).  In 2005, Dow filed a civil suit

---

[1]Deloitte & Touche USA, LLP is now known as Deloitte LLP.

challenging IRS adjustments to partnership returns filed by Chemtech I and Chemtech II. *Chemtech Royalty Assocs.*, *L.P. v. United States*, No. 05-944 (M.D. La. filed July 13, 2005). During discovery, the government subpoenaed documents from Dow's independent auditor, Deloitte & Touche USA, LLP. Since the subpoena sought production in Washington, D.C., it issued from the U.S. District Court for the District of Columbia. Deloitte produced a number of documents, but refused to produce three documents Dow identified as attorney work product. In response, the government filed a motion to compel production.

The three disputed documents are described in Dow's privilege log and in a declaration by William Curry, Dow's Director of Taxes. The first document is a 1993 draft memorandum prepared by Deloitte that summarizes a meeting between Dow employees, Dow's outside counsel, and Deloitte employees about the possibility of litigation over the Chemtech I partnership, and the necessity of accounting for such a possibility in an ongoing audit. This meeting took place after Dow informed Deloitte about the likelihood of litigation over the Chemtech I transaction. The second is a 1998 memorandum and flow chart prepared by two Dow employees—an accountant and an in-house attorney. The third is a 2005 tax opinion prepared by Dow's outside counsel. Curry's declaration explains that the second and third documents were disclosed to Deloitte so that it could "review the adequacy of Dow's contingency reserves for the Chemtech transactions." According to Curry, Deloitte "compelled Dow's production of these documents by informing the company that access to these documents was required in order to provide Dow with an unqualified audit opinion for its public financial statements." The privilege log describes the subject matter of these documents as "[t]ax issues related to the Chemtech partnership" and states that each one is a "[d]ocument prepared in

anticipation of litigation." We will refer to the first document, which was prepared by Deloitte, as the "Deloitte Memorandum," and the second and third documents, which were created by Dow, as the "Dow Documents."

The district court denied the government's motion to compel without reviewing the disputed documents *in camera*. *United States v. Deloitte & Touche USA LLP*, 623 F. Supp. 2d 39, 40-41 (D.D.C. 2009). It concluded that the Deloitte Memorandum was work product because it was "prepared because of the prospect of litigation with the IRS over the tax treatment of Chemtech." *Id.* at 40 n.1. The court further concluded that, although the document was created by Deloitte, it was nonetheless Dow's work product because "its contents record the thoughts of Dow's counsel regarding the prospect of litigation." *Id.* In addition, the court rejected the government's contention that Dow had waived work-product protection for the three documents. The court acknowledged that disclosing work product to a third party can waive protection if that disclosure is "inconsistent with the maintenance of secrecy from the disclosing party's adversary," *id.* at 41 (quoting *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 605 (D.C. Cir. 2001)), but concluded that Dow's disclosure to Deloitte was not inconsistent with maintaining secrecy because (1) Deloitte was not a potential adversary and (2) nothing suggested that it was unreasonable for Dow to expect Deloitte to maintain confidentiality, *id.* The government appeals this ruling, and Dow has intervened to assert work-product protection. Since the government's motion to compel was the sole issue before the district court, its disposition of that motion was an appealable final judgment. *In re Multi-Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 676 (D.C. Cir. 1981).

## II. Analysis

The government contends that the Deloitte Memorandum is not attorney work product. Alternatively, it argues that even if the Deloitte Memorandum is work product, Dow waived work-product protection when it orally disclosed the information recorded therein to Deloitte. Turning to the Dow Documents, the government concedes they are attorney work product, but argues that Dow waived work-product protection when it gave them to Deloitte. We generally review the district court's discovery orders for abuse of discretion. *United States v. Williams Cos.*, 562 F.3d 387, 396 (D.C. Cir. 2009). If the district court applied an incorrect legal standard, however, we review *de novo*. *In re Sealed Case*, 146 F.3d 881, 883-84 (D.C. Cir. 1998).

A. *The Work-Product Doctrine*

The Supreme Court established the work-product doctrine in *Hickman v. Taylor*, 329 U.S. 495 (1947), which held that an attorney's notes recording his interviews with witnesses to the litigation-prompting incident were protected from discovery. *Id.* at 509-10. The Court recognized that to prepare for litigation, an attorney must "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Id.* at 511. This preparation "is reflected . . . in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways." *Id.* The Court reasoned that giving opposing counsel access to such work product would cause significant problems:

> [M]uch of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate,

would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Id.* Consequently, the Court concluded that attorney work product is protected from discovery unless "the one who would invade that privacy" carries the burden of "establish[ing] adequate reasons to justify production through a subpoena or court order." *Id.* at 512.

The work-product doctrine announced in *Hickman* was subsequently partially codified in Federal Rule of Civil Procedure 26(b)(3), which states:

(A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).

FED. R. CIV. P. 26(b)(3)(A). Rule 26(b)(3) allows a court to order disclosure when the requesting party can show a "substantial need" for the material and an inability to procure equivalent information "without undue hardship." FED. R. CIV. P. 26(b)(3)(A)(ii). When a court orders disclosure under this exception, however, it must still "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." FED. R. CIV. P. 26(b)(3)(B). This type of work product, which is often described as opinion work product, "is virtually undiscoverable." *Dir., Office of Thrift Supervision v.*

*Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997).

B. *The Deloitte Memorandum*

The government makes two categorical arguments that the Deloitte Memorandum cannot be work product. First, it argues that the Deloitte Memorandum cannot be work product because it was created by Deloitte, not Dow or its representative. Second, it argues that the Deloitte Memorandum cannot be work product because it was generated as part of the routine audit process, not in anticipation of litigation. If either argument is correct, the Deloitte Memorandum cannot be work product, regardless of its contents. We reject both arguments, but nevertheless conclude that the district court lacked sufficient information to determine that the entire Deloitte Memorandum is work product.

1

The government first contends that Dow cannot claim work-product protection for the Deloitte Memorandum because it was prepared by Deloitte. Rule 26(b)(3) only protects "documents and tangible things that are prepared . . . by or for another party or its representative." FED. R. CIV. P. 26(b)(3)(A). Given this language, the government argues that the Deloitte Memorandum is not work product because Deloitte is not Dow's representative. It relies principally on *United States v. Arthur Young & Co.*, 465 U.S. 805 (1984), in which the Supreme Court refused to recognize an accountant work-product privilege. In *Arthur Young*, the Court contrasted the role of an attorney with that of an accountant, explaining that an attorney is "a loyal representative whose duty it is to present the client's case in the most favorable possible light," whereas an independent certified public accountant has a "*public* responsibility" and "owes ultimate allegiance to the corporation's creditors and

stockholders, as well as to the investing public." *Id.* at 817-18. In the government's view, *Arthur Young* demonstrates that Deloitte cannot be Dow's representative, which in turn means that the Deloitte Memorandum cannot be work product under the plain language of Rule 26(b)(3). Dow counters that the "representative" for purposes of Rule 26(b)(3) is its counsel, whose thoughts and opinions are recorded in the document. In addition, it argues that the Deloitte Memorandum is work product because it contains the same type of opinion work product that is found in the Dow Documents, which the government concedes are work product.

Even if the government is correct in asserting that the Deloitte Memorandum falls outside the definition given by Rule 26(b)(3), this does not conclusively establish that it is not work product. The government mistakenly assumes that Rule 26(b)(3) provides an exhaustive definition of what constitutes work product. On the contrary, Rule 26(b)(3) only partially codifies the work-product doctrine announced in *Hickman*. Rule 26(b)(3) addresses only "documents and tangible things," but *Hickman*'s definition of work product extends to "intangible" things. 329 U.S. at 511. Moreover, in *Hickman*, the Court explained that the attorney's "mental impressions" were protected from discovery, so that he could not be forced to "repeat or write out" that information in discovery. *Id.* at 512-13. Thus *Hickman* provides work-product protection for intangible work product independent of Rule 26(b)(3). *Accord In re Seagate Tech., LLC*, 497 F.3d 1360, 1376 (Fed. Cir. 2007); *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 662 (3d Cir. 2003); *United States v. 266 Tonawanda Trail*, 95 F.3d 422, 428 n.10 (6th Cir. 1996).

The government focuses on Deloitte's role in creating the document and on its relationship to Dow. Under *Hickman*, however, the question is not who created the document or how

they are related to the party asserting work-product protection, but whether the document contains work product—the thoughts and opinions of counsel developed in anticipation of litigation. The district court found that the memorandum records those thoughts, even though Deloitte and not Dow or its attorney committed them to paper. The work product privilege does not depend on whether the thoughts and opinions were communicated orally or in writing, but on whether they were prepared in anticipation of litigation. Thus Deloitte's preparation of the document does not exclude the possibility that it contains Dow's work product.

2

The government next contends that the Deloitte Memorandum cannot be work product because it was generated during an annual audit, not prepared in anticipation of litigation. The courts are not unanimous on the proper test for determining whether a document was prepared "in anticipation of litigation." Under the test adopted by most circuits, the question is whether the document was created "because of" the anticipated litigation. *See, e.g.*, *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010); *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009); *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004); *PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 817 (8th Cir. 2002); *Maine v. U.S. Dep't of the Interior*, 298 F.3d 60, 68 (1st Cir. 2002); *Montgomery County v. MicroVote Corp.*, 175 F.3d 296, 305 (3d Cir. 1999); *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998); *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992). The Fifth Circuit, however, requires that anticipation of litigation be the "primary motivating purpose" behind the document's creation. *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982).

Like most circuits, we apply the "because of" test, asking "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Sealed Case*, 146 F.3d at 884 (quotation omitted). In addition, while this standard addresses a "document," it applies equally to work product in other forms. Thus for the Deloitte Memorandum, the question is whether it records information prepared by Dow or its representatives because of the prospect of litigation.

In the government's view, the Deloitte Memorandum was prepared not "because of the prospect of litigation," but as part of the routine audit process. The government asserts that a document's *function*, not its *content*, determines whether it is work product. For this proposition the government relies on *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124 (D.C. Cir. 1987). In *Delaney*, a law firm sought to obtain under the Freedom of Information Act memoranda and supporting documents relating to the government's legal analysis of an Internal Revenue Service program concerning the use of statistical sampling in auditing large accounts. In that case it was the IRS that asserted work-product protection. The court held that the documents were work product because they "advise[d] the agency of the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome." *Id.* at 127. In its reasoning, the court noted that a previous work-product decision had identified "the function of the documents as the critical issue." *Id.* at 127 (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 858 (D.C. Cir. 1980)). The government seizes on this language, arguing that the Deloitte Memorandum is not work product because its function was to facilitate Deloitte's audit, not to prepare Dow for litigation.

We think the government misreads *Delaney*. While *Delaney* used the term "function," it was not considering any distinction between function and content in determining whether a document constituted work product. On the contrary, the court evaluated the function of the IRS documents at issue *by examining their contents*. It contrasted the documents at issue in the *Coastal States* case, which were like "an agency manual, fleshing out the meaning of the statute it was authorized to enforce," with the documents at issue in *Delaney*, which were memoranda describing potential legal challenges, possible defenses, and likely outcomes. *Id. Delaney* does not support the proposition that we should look solely to a document's function divorced from its contents in determining its status as work product.

The government also relies on two decisions holding that a corporation's tax accrual workpapers were not prepared in anticipation of litigation. In *El Paso*, the Fifth Circuit applied the "primary motivating purpose" standard and concluded that El Paso's tax accrual workpapers were not work product because the company's primary motivation in creating them was "to bring its financial books into conformity with generally accepted auditing principles" as required by federal securities laws. 682 F.2d at 543. The court reasoned that the "primary motivating force . . . [was] not to ready El Paso for litigation over its tax returns," but "to anticipate, for financial reporting purposes, what the impact of litigation might be on the company's tax liability." *Id.*

In *United States v. Textron Inc.*, 577 F.3d 21 (1st Cir. 2009) (en banc), the First Circuit likewise held that a corporation's tax accrual workpapers were not prepared in anticipation of litigation. Applying the "because of" test, the court concluded that the workpapers were "tax documents and not case preparation materials" that were "prepared in the ordinary

course of business" and that their only purpose was "to support a financial statement and the independent audit of it." *Id.* at 28, 30. It found no evidence that the workpapers were prepared for "potential use in litigation" or that they "would in fact serve any useful purpose for Textron in conducting litigation if it arose." *Id.* at 30.

The government argues that *El Paso* and *Textron* demonstrate that when a document is created as part of an independent audit, as the Deloitte Memorandum was, its sole function is to facilitate that audit, which means it was not prepared in anticipation of litigation. Neither case convinces us. *El Paso* was decided under the "primary motivating purpose" test, which is more demanding than the "because of" test we employ. Under the more lenient "because of" test, material generated in anticipation of litigation may also be used for ordinary business purposes without losing its protected status. For example, in *Adlman*, the Second Circuit considered whether a document containing legal analysis about possible future litigation qualified as work product when it was procured to assist the parties in deciding whether to go through with a proposed merger. The court held that

> a document created because of anticipated litigation, which tends to reveal mental impressions, conclusions, opinions or theories concerning the litigation, does not lose work-product protection merely because it is intended to assist in the making of a business decision influenced by the likely outcome of the anticipated litigation. Where a document was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation, it falls within Rule 26(b)(3).

134 F.3d at 1195. Under this same reasoning, material developed in anticipation of litigation can be incorporated into a document produced during an audit without ceasing to be work product. *Textron*, which did apply the "because of" standard, is distinguishable because it turned on the court's examination of the particular documents at issue. While the court concluded that those documents were not work product, it did not exclude the possibility that other documents prepared during the audit process might warrant work-product protection. Moreover, Judge Torruella's dissenting opinion in *Textron* makes a strong argument that while the court said it was applying the "because of" test, it actually asked whether the documents were "prepared for use in possible litigation," a much more exacting standard. 577 F.3d at 32.

In short, a document can contain protected work-product material even though it serves multiple purposes, so long as the protected material was prepared because of the prospect of litigation.

3

Rejecting the government's categorical arguments establishes only that the Deloitte Memorandum may be protected work product under the law; we must now determine whether it is. On examination of the record, we conclude that the district court did not have a sufficient evidentiary foundation for its holding that the memorandum was purely work product. According to the record, the document was created during Deloitte's preparation of an audit report which in Deloitte's view required consideration of potential litigation. The meeting generating the document included both Deloitte and Dow employees, as well as Dow's outside counsel. The document itself was prepared by a third party. While none of this negates the possibility of work-product privilege, it could make it likely

that the document includes other information that is not work product. According to Dow's privilege log and the Curry declaration, the memorandum does contain thoughts and analyses by legal counsel, but this does not rule out or even render unlikely the possibility that it also includes other facts, other thoughts, other analyses by non-attorneys which may not be so intertwined with the legal analysis as to warrant protection under the work-product doctrine. We will therefore remand this question to the district court for the purpose of independently assessing whether the document was entirely work product, or whether a partial or redacted version of the document could have been disclosed. Accordingly, we vacate the district court's decision that the Deloitte Memorandum was work product and remand so that the district court can examine the document *in camera* to determine whether it is entirely work product. *See In re Sealed Case*, 146 F.3d at 886-88 (remanding for *in camera* review to determine whether documents were prepared in anticipation of litigation); *In re Sealed Case*, 29 F.3d 715, 718 (D.C. Cir. 1994) (same).

C. *The Dow Documents*

Although the government concedes that the Dow Documents are work product, it contends that Dow waived work-product protection by disclosing them to Deloitte. To the best of our knowledge, no circuit has addressed whether disclosing work product to an independent auditor constitutes waiver. Among the district courts that have addressed this issue, most have found no waiver. *E.g.*, *Regions Fin. Corp. v. United States*, No. 2:06-CV-00895-RDP, 2008 WL 2139008, at *8 (N.D. Ala. May 8, 2008) (slip op.); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 237 F.R.D. 176, 183 (N.D. Ill. 2006); *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW, 2006 WL 2850049, at *1 (N.D. Cal. Oct. 5, 2006) (unpublished decision); *Am. S.S. Owners Mut. Prot. & Indem.*

*Ass'n v. Alcoa S.S. Co.*, No. 04-Civ-4309, 2006 WL 278131, at *2 (S.D.N.Y. Feb. 2, 2006) (unpublished decision); *Frank Betz Assocs., Inc. v. Jim Walter Homes, Inc.*, 226 F.R.D. 533, 535 (D.S.C. 2005); *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 447-49 (S.D.N.Y. 2004); *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 300 (S.D.N.Y. 2003); *Gutter v. E.I. Dupont de Nemours & Co.*, No. 95-CV-2152, 1998 WL 2017926, at *5 (S.D. Fla. May 18, 1998) (unpublished decision); *In re Pfizer Inc. Sec. Litig.*, No. 90 Civ. 1260, 1993 WL 561125, at *6 (S.D.N.Y. Dec. 23, 1993) (unpublished decision). At least two courts have found waiver. *Medinol, Ltd. v. Boston Scientific Corp.*, 214 F.R.D. 113, 115-17 (S.D.N.Y. 2002); *In re Diasonics Sec. Litig.*, No. C-83-4584-RFP, 1986 WL 53402, at *1 (N.D. Cal. June 15, 1986) (unpublished decision).

While voluntary disclosure waives the attorney-client privilege, it does not necessarily waive work-product protection. *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) (*AT&T*). As we explained in *AT&T*, the attorney-client privilege and the work-product doctrine serve different purposes: the former protects the attorney-client relationship by safeguarding confidential communications, whereas the latter promotes the adversary process by insulating an attorney's litigation preparation from discovery. *Id.* Voluntary disclosure waives the attorney-client privilege because it is inconsistent with the confidential attorney-client relationship. *Id.* Voluntary disclosure does not necessarily waive work-product protection, however, because it does not necessarily undercut the adversary process. *Id.* Nevertheless, disclosing work product to a third party can waive protection if "such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary." *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 605 (D.C. Cir. 2001) (quoting *AT&T*, 642 F.2d at 1299). Under this standard, the

voluntary disclosure of attorney work product to an adversary or a conduit to an adversary waives work-product protection for that material.

Applying this standard, the government contends that Dow has waived work-product protection for the Dow Documents because Deloitte is (1) a potential adversary and (2) a conduit to other adversaries. We reject both contentions and conclude that Dow has not waived the protection.

1

The government contends that Deloitte is a potential adversary of Dow because disputes sometimes arise between independent auditors and their clients and because independent auditors have the power to issue opinions that adversely affect their clients. Neither argument demonstrates that Deloitte is a potential adversary for purposes of waiver analysis. First, as an independent auditor, Deloitte cannot be Dow's adversary. Even the threat of litigation between an independent auditor and its client can compromise the auditor's independence and necessitate withdrawal. *See* AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA), AICPA PROFESSIONAL STANDARDS, CODE OF PROFESSIONAL CONDUCT § 101.08 (2005) (hereinafter AICPA CODE OF PROFESSIONAL CONDUCT) (discussing the effect of actual and threatened litigation on auditor independence). Further, Deloitte's power to issue an adverse opinion, while significant, does not make it the sort of litigation adversary contemplated by the waiver standard. Similarly, "any tension between an auditor and a corporation that arises from an auditor's need to scrutinize and investigate a corporation's records and book-keeping practices simply is not the equivalent of an adversarial relationship contemplated by the work product doctrine." *Merrill Lynch*, 229 F.R.D. at 448. Second, the possibility of a future dispute between Deloitte and

Dow does not render Deloitte a potential adversary for the present purpose. If it did, any voluntary disclosure would constitute waiver. Yet the work-product doctrine allows disclosures as long as they do not undercut the adversary process. *See AT&T*, 642 F.2d at 1299.

Here, the question is not whether Deloitte could be Dow's adversary in any conceivable future litigation, but whether Deloitte could be Dow's adversary in the sort of litigation the Dow Documents address. We conclude that the answer must be no. In preparing the Dow Documents, Dow anticipated a dispute with the IRS, not a dispute with Deloitte. The documents, which concern the tax implications of the Chemtech partnerships, would not likely be relevant in any dispute Dow might have with Deloitte. Thus Deloitte cannot be considered a potential adversary with respect to the Dow Documents.

The government argues that *United States v. Massachusetts Institute of Technology*, 129 F.3d 681 (1st Cir. 1997), supports its argument that an independent auditor is a potential adversary. In that case, a defense contractor (MIT) under IRS investigation claimed work-product protection for expense reports it had disclosed to the Defense Contract Audit Agency, a branch of the Department of Defense. The First Circuit held that MIT had waived the protection by disclosing its expense reports to a potential adversary. *Id.* at 687. The court's reasoning is clear: MIT disclosed the expense reports to the auditing arm of the Defense Department, the most likely adversary in any dispute over expense reports. In doing so, it disclosed its work product not to an independent auditor, but to an auditor affiliated with a potential adversary. Dow's disclosure to its independent auditor, which is not a potential adversary in tax litigation over the Chemtech partnerships, is wholly different.

2

The government also asserts that Deloitte is a conduit to Dow's adversaries. It claims the district court failed to address this question, but this ignores the district court's explicit statement that "no evidence suggests that it was unreasonable for Dow to expect Deloitte USA to maintain confidentiality." *Deloitte*, 623 F. Supp. 2d at 41. Like the district court, we conclude that Deloitte is not a conduit to Dow's adversaries.

Our prior decisions applying the "maintenance of secrecy" standard, while fact-intensive, have generally made two discrete inquiries in assessing whether disclosure constitutes waiver. First, we have considered whether the disclosing party has engaged in self-interested selective disclosure by revealing its work product to some adversaries but not to others. *Williams*, 562 F.3d at 394; *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1372 (D.C. Cir. 1984). Such conduct militates in favor of waiver, for it is "inconsistent and unfair to allow [parties] to select according to their own self-interest to which adversaries they will allow access to the materials." *In re Subpoenas*, 738 F.2d at 1372.

Second, we have examined whether the disclosing party had a reasonable basis for believing that the recipient would keep the disclosed material confidential. *Williams*, 562 F.3d at 394; *In re Subpoenas*, 738 F.2d at 1372-74. A reasonable expectation of confidentiality may derive from common litigation interests between the disclosing party and the recipient. *In re Subpoenas*, 738 F.2d at 1372. As we explained in *AT&T*, "[t]he existence of common interests between transferor and transferee is relevant to deciding whether the disclosure is consistent with the nature of the work product privilege." 642 F.2d at 1299. This is true because when common litigation interests are present, "the transferee is not at all likely to disclose the work product

material to the adversary." *Id.* Alternately, a reasonable expectation of confidentiality may be rooted in a confidentiality agreement or similar arrangement between the disclosing party and the recipient. Nevertheless, a confidentiality agreement must be relatively strong and sufficiently unqualified to avoid waiver. In *Williams*, for example, we concluded that the government's assurance that it would maintain confidentiality "to the extent possible" was not sufficiently strong or sufficiently unqualified to prevent the government from disclosing the information to a criminal defendant under *Brady v. Maryland*, 373 U.S. 83 (1963). 562 F.3d at 395-96. Likewise, we have determined that a mere promise to give the disclosing party notice before releasing documents does not support a reasonable expectation of confidentiality. *In re Subpoenas*, 738 F.2d at 1373.

The selective disclosure inquiry is straightforward. Selective disclosure involves disclosing work product to at least one adversary. As we have explained, Deloitte is not an adversary, so Dow's disclosure to Deloitte was not selective disclosure. The "reasonable expectation of confidentiality" inquiry is more complicated. As to common interests, Dow and Deloitte do not have common litigation interests in the Dow Documents—Dow has a litigation interest in the documents because of its interest in the Chemtech partnerships, but Deloitte has no similar interest in the documents. Absent common interests, the question is whether a confidentiality agreement or similar assurance gave Dow a reasonable expectation that Deloitte would keep its work product confidential.

We conclude that Dow had a reasonable expectation of confidentiality because Deloitte, as an independent auditor, has an obligation to refrain from disclosing confidential client information. Rule 301 of the American Institute of Certified Public Accountants (AICPA) Code of Professional Conduct

provides: "A member in public practice shall not disclose any confidential client information without the specific consent of the client." AICPA CODE OF PROFESSIONAL CONDUCT § 301.01. William Curry's declaration explains that "Dow furnished these documents to D&T [Deloitte] with the expectation that D&T would retain the confidentiality of the two documents." Given the obligation imposed by Rule 301, we think this expectation was reasonable.

The government responds that this is a "qualified assurance" that does not suffice to prevent waiver because Rule 301 also explains that it "shall not be construed . . . to affect in any way the member's obligation to comply with a validly issued and enforceable subpoena or summons." *Id.* But an assertion of work-product protection challenges the enforceability of a subpoena with respect to those materials. Thus Deloitte could refuse to produce the documents, thereby allowing Dow to intervene and assert work-product protection, without violating its obligation to comply with enforceable subpoenas. Indeed, this is exactly what Deloitte did. Accordingly, this caveat does not significantly diminish the reasonableness of Dow's expectation of confidentiality.

The government also attempts to bolster its waiver argument by identifying instances in which an independent auditor might disclose information obtained from a company whose finances it audits. For example, it asserts that Deloitte could make Dow disclose its confidential tax analysis in footnotes to its public financial statements. Likewise, Deloitte could testify about confidential information obtained from Dow in proceedings brought by the SEC or private parties. Or Deloitte might report illegal acts it detects during its audit in accordance with § 10A of the Securities and Exchange Act, 15 U.S.C. § 78j-1. Finally, the government returns to *Arthur Young*, arguing that as an independent auditor, Deloitte is a

"public watchdog" whose ultimate allegiance is to Dow's creditors, stockholders, and the investing public—all potential adversaries of Dow. In sum, the government contends that Dow could not reasonably expect confidentiality from Deloitte after giving it the Dow Documents, given the myriad ways Deloitte could reveal that information.

Of course Deloitte might disclose some information relevant to Dow's finances. But the government has neither pointed to any regulatory provision nor posited any specific circumstance under which Deloitte would be required to disclose attorney work product like that contained in the Dow Documents. An independent auditor can fulfill its duties and render an opinion concerning a company's public financial statements without revealing every piece of information it reviews during the audit process. In short, Deloitte's independent auditor obligations do not make it a conduit to Dow's adversaries.

Likewise, the government's reliance on *Arthur Young* is misplaced. In *Arthur Young*, the Court considered whether *accountant* work-product should be granted the same protection *attorney* work product receives. The government quotes the Court's statement that "[t]o insulate from disclosure a certified public accountant's interpretations of the client's financial statements would be to ignore the significance of the accountant's role as a disinterested analyst charged with public obligations." *Arthur Young*, 465 U.S. at 818. All well and good. In this case, however, the government attempts to discover not an independent auditor's "interpretations of the client's financial statements," which *Arthur Young* would permit, but an attorney's thoughts and opinions developed in anticipation of litigation, which the work-product doctrine forbids.

Furthermore, we are mindful that independent auditors have significant leverage over the companies whose finances they audit. An auditor can essentially compel disclosure by refusing to provide an unqualified opinion otherwise. Finding waiver based on such disclosures could well encourage the sort of "[i]nefficiency, unfairness and sharp practices" that *Hickman* sought to avoid. For example, it might discourage companies from seeking legal advice and candidly disclosing that information to independent auditors. Moreover, the government has not proffered any good reason for wanting the Dow Documents other than its desire to know what Dow's counsel thought about the Chemtech partnerships. Granting discovery under these circumstances would undercut the adversary process and let the government litigate "on wits borrowed from the adversary," *Hickman*, 329 U.S. at 516 (Jackson, J., concurring). We conclude that the district court applied the correct legal standard and acted within its discretion in determining that Dow had not waived work-product protection. Consequently, we affirm the district court's decision denying the government's motion to compel with respect to the Dow Documents.

\* \* \*

For the reasons set forth above, we vacate in part, affirm in part, and remand for further proceedings consistent with this opinion.

*So ordered.*