**[J-80-2018] [MO:Mundy, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| GEORGE R. BOUSAMRA, M.D. | : | No. 5 WAP 2018 |
| | : | |
| | : | Appeal from the Order of the Superior |
| v. | : | Court entered July 19, 2017 at No. |
| | : | 1637 WDA 2015, affirming the Order |
| | : | of the Court of Common Pleas of |
| EXCELA HEALTH, A CORPORATION; | : | Allegheny County entered October 6, |
| WESTMORELAND REGIONAL | : | 2015 at No. G.D. 12-003929, and |
| HOSPITAL, DOING BUSINESS AS | : | remanding. |
| EXCELA WESTMORELAND HOSPITAL, | : | |
| A CORPORATION; ROBERT ROGALSKI; | : | ARGUED:  October 24, 2018 |
| JEROME E. GRANATO, M.D.; LATROBE | : | |
| CARDIOLOGY ASSOCIATES, INC., A | : | |
| CORPORATION;  ROBERT N. STAFFEN, | : | |
| M.D.; MERCER HEALTH & BENEFITS, | : | |
| LLC; AND AMERICAN MEDICAL | : | |
| FOUNDATION FOR PEER REVIEW AND | : | |
| EDUCATION, INC., A CORPORATION | : | |
| | : | |
| | : | |
| APPEAL OF: EXCELA HEALTH, | : | |
| WESTMORELAND REGIONAL | : | |
| HOSPITAL, ROBERT ROGALSKI, | : | |
| JEROME E. GRANATO, M.D., AND | : | |
| LATROBE CARDIOLOGY ASSOCIATES, | : | |
| INC. | : | |

## CONCURRING OPINION

**JUSTICE WECHT**                          **DECIDED:  JUNE 18, 2019**

I join the Majority's well-reasoned opinion.  I concur in the Majority's conclusion

that Excela Health ("Excela") waived attorney-client privilege when its in-house counsel,

Timothy Fedele ("Fedele"), disclosed to public relations firm Jarrad, Phillips, Cate &

Hancock ("Jarrad") a confidential communication that Fedele had received from Excela's

outside counsel. On this issue, I have nothing to add to the Majority's learned and thorough analysis.

I agree as well with the standard that the Majority adopts regarding waiver of attorney work product protection. As this Court announces a new common law rule today, I write separately to comment on that rule's implications for future litigation.

The work product doctrine promotes the adversarial system by affording lawyers a protected private space within which to prepare their cases. *See Barrick v. Holy Spirit Hosp. of Sisters of Christian Charity*, 91 A.3d 680, 686 (Pa. 2014) (Opinion Announcing the Judgment of the Court) ("[T]he work product protection supports our judicial system based on the adversarial process by allowing counsel privacy to develop ideas, test theories, and explore strategies in support of the client's interest, without fear that the documents in which the ideas, theories and strategies are written will be revealed to the opposing counsel.").[1]

Effectively adopting Section 91 of the American Law Institute's Restatement (Third) of the Law Governing Lawyers,[2] the Majority holds (and I agree) that this work product protection is waived "when the work product is shared with an adversary, or disclosed in a manner which significantly increases the likelihood that an adversary or anticipated adversary will obtain it." *See* Maj. Op. at 16. When work product is shared directly with an adversary, the resulting waiver likely will be clear. The more difficult question is how a court determines whether a communication has been "disclosed in a

---

[1]     *See also* Pa.R.C.P. 4003.3 cmt. ("The essential purpose of the Rule is to keep the files of counsel free from examination by the opponent[.]").

[2]     Subsection 4 of Section 91 states: "Work-product immunity is waived if the client, the client's lawyer, or another authorized agent of the client . . . discloses the material to third persons in circumstances in which there is a significant likelihood that an adversary or potential adversary in anticipated litigation will obtain it." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS, § 91(4) (2000).

manner which significantly increases the likelihood that an adversary or anticipated adversary will obtain it." *See id.* As acknowledged by the Majority and by courts that have adopted a similar approach, application of the test is fact-intensive, requiring case-by-case examination. *See id.* The inquiry is not readily susceptible to bright-line rules. Opinions employing comparable waiver analyses provide only as much persuasive guidance concerning the Section 91 paradigm as the fact patterns in each individual case will allow, whether by analogy or by other common law methods.

The most instructive opinion comes to us from the United States Court of Appeals for the District of Columbia Circuit, which held that "disclosing work product to a third party can waive protection 'if such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary.'" *United States v. Deloitte, LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010) (quoting *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 605 (D.C. Cir. 2001)). In determining whether disclosure is inconsistent with maintaining the secrecy of the communication, the Court of Appeals concluded, jurists must examine "whether the disclosing party had a reasonable basis for believing that the recipient would keep the disclosed material confidential." *Deloitte*, 610 F.3d at 141. The *Deloitte* Court considered whether Dow Chemical Company's disclosure of attorney work product to Dow's independent auditor waived the work product protection. Applying the above-recited standard, the court noted that a reasonable expectation of confidentiality "may be rooted in a confidentiality agreement or similar arrangement between the disclosing party and the recipient." *Id.* Moreover, where the relationship between the disclosing party and the third party is governed by rules of

professional conduct that entail a duty of confidentiality, it is reasonable to expect that the third party will maintain secrecy. *Id.* at 142.[3]

In the particular context of disclosures to public relations consultants, the United States District Court for the Southern District of New York has reasoned that, while public relations advice is not itself subject to work product protection:

> [i]t does not follow, however, that an otherwise valid assertion of work-product protection is waived with respect to an attorney's own work-product simply because the attorney provides the work-product to a public relations consultant whom he has hired and who maintains the attorney's work-product in confidence. This is especially so if . . . the public relations firm needs to know the attorney's strategy in order to advise as to public relations, and the public relations impact bears, in turn, on the attorney's own strategizing as to whether or not to take a contemplated step in the litigation itself and, if so, in what form.

*Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) (internal citations omitted). In *Wachner*, the trust's attorney had retained the public relations firm that was providing consulting services for the trust. Such an engagement presents a factual circumstance that is lacking in the instant case, yet this distinction itself is not dispositive. Rather, in determining whether work product protection has been waived, the third-party recipient's employment status is less important than the question of whether

---

[3] The D.C. Circuit also recognized that "[t]he existence of common interests between [the disclosing party] and [the recipient] is relevant to deciding whether the disclosure is consistent with the nature of the work product privilege." *Id.* at 141 (citing *United States v. AT&T*, 642 F.2d 1285, 1299 (D.C. Cir. 1980)). "This is true because when common litigation interests are present the transferee is not at all likely to disclose the work product material to the adversary." *Id.* Although the D.C. Circuit will find no waiver where common *litigation* interests are shared by the disclosing party and the recipient, the Restatement implies that courts need not so narrowly construe the common interest exception. *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS, § 91 cmt. b. ("Work product . . . may generally be disclosed to . . . the client's business advisers or agents, . . . or persons similarly aligned on a matter of common interest."). The common interest of the disclosing party and the receiving party may be a factor in determining whether waiver results in disclosure, regardless of whether the two are co-parties in litigation or anticipated litigation.

there exists a "reasonable basis for believing that the recipient would keep the disclosed material confidential." *See Deloitte*, 610 F.3d at 141; *In re Copper Market*, 200 F.R.D. 213, 221 n.6 (S.D.N.Y. 2001) (noting that, even if public relations firm was not the functional equivalent of the client's employee, disclosure did not result in waiver of the work product protection because the disclosure did not substantially increase the possibility that an adversary would obtain the information). By contrast, in the context of the attorney-client privilege, the employment status of a third party can become the central consideration, because, where the client is a corporation, the privilege extends to agents or employees of the client authorized to act on the corporation's behalf. *See* Maj. Op. at 25; *Yocabet v. UPMC Presbyterian*, 119 A.3d 1012, 1027 (Pa. Super. 2015).[4]

When performing a waiver analysis, it is imperative to keep in mind that "[e]ffective trial preparation often entails disclosing work product to coparties and nonparties." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS, § 91 cmt. b. This is consistent with the work product doctrine's purpose "to protect information against opposing parties, rather than against all others outside a particular confidential relationship." *AT&T*, 642 F.2d at 1299. Waiver "follows only where disclosure is inconsistent with the objectives of the immunity." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS, § 91 cmt. c. Where the disclosing party takes sufficient affirmative steps to maintain the work product's confidentiality, whether through a confidentiality agreement, similar arrangement, or other adequate assurances, such that the disclosing party has a reasonable basis to believe that the receiving party will keep the communication confidential, waiver need not result.

---

[4] On the issue of attorney-client privilege, the Majority concludes, and I agree, that Jarrad was not the functional equivalent of an Excela employee. Although this is relevant to and dispositive of the Majority's holding that Fedele waived Excela's attorney-client privilege by forwarding to Jarrad the email that Fedele received from outside counsel, this conclusion does not result automatically in waiver of the attorney work product protection.

In order to zealously represent their clients, attorneys may be required to disclose work product to third parties. The approach adopted today allows for such disclosures so long as work product is not "shared with an adversary, or disclosed in a manner which significantly increases the likelihood that an adversary or anticipated adversary will obtain it." Maj. Op. at 16. Despite the fact-intensive, *post-hoc* evaluations that such a formula requires, a less forgiving waiver analysis, especially one that would approach the strict rule applicable to waiver of attorney-client privilege, might have a chilling effect on an attorney's ability to disclose work product to third parties, thus undermining the primary aim of the doctrine—to provide an attorney with a zone of privacy within which effectively to represent the client. *See* Jeff A. Anderson et al., *The Work Product Doctrine*, 68 CORNELL L. REV. 760, 891-93 (Aug. 1983).

The contours of the rule adopted by today's Majority surely will be shaped further by decisions of this Court and our intermediate appellate tribunals in future controversies. In those fact-intensive contexts, courts should respect and adhere to the protective purpose underlying the work product doctrine while remaining mindful as well of circumstances where a party has waived such protection.