JUSTICE WECHT, Concurring
I join the Majority's well-reasoned opinion. I concur in the Majority's conclusion that Excela Health ("Excela") waived attorney-client privilege when its in-house counsel, Timothy Fedele ("Fedele"), disclosed to public relations firm Jarrad, Phillips, Cate & Hancock ("Jarrad") a confidential communication that Fedele had received from Excela's outside counsel. On this issue, I have nothing to add to the Majority's learned and thorough analysis.
I agree as well with the standard that the Majority adopts regarding waiver of attorney work product protection. As this Court announces a new common law rule today, I write separately to comment on that rule's implications for future litigation.
The work product doctrine promotes the adversarial system by affording lawyers a protected private space within which to prepare their cases. See Barrick v. Holy Spirit Hosp. of Sisters of Christian Charity , 625 Pa. 301, 91 A.3d 680, 686 (2014) (Opinion Announcing the Judgment of the Court) ("[T]he work product protection supports our judicial system based on the adversarial process by allowing counsel privacy to develop ideas, test theories, and explore strategies in support of the client's interest, without fear that the documents in which the ideas, theories and strategies are written will be revealed to the opposing counsel.").[1]
Effectively adopting Section 91 of the American Law Institute's Restatement (Third) of the Law Governing Lawyers,[2] the Majority holds (and I agree) that this work product protection is waived "when the work product is shared with an adversary, or disclosed in a manner which significantly increases the likelihood that an *991 adversary or anticipated adversary will obtain it." See Maj. Op. at 978. When work product is shared directly with an adversary, the resulting waiver likely will be clear. The more difficult question is how a court determines whether a communication has been "disclosed in a manner which significantly increases the likelihood that an adversary or anticipated adversary will obtain it." See id. As acknowledged by the Majority and by courts that have adopted a similar approach, application of the test is fact-intensive, requiring case-by-case examination. See id. The inquiry is not readily susceptible to bright-line rules. Opinions employing comparable waiver analyses provide only as much persuasive guidance concerning the Section 91 paradigm as the fact patterns in each individual case will allow, whether by analogy or by other common law methods.
The most instructive opinion comes to us from the United States Court of Appeals for the District of Columbia Circuit, which held that "disclosing work product to a third party can waive protection 'if such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary.' " United States v. Deloitte, LLP , 610 F.3d 129, 140 (D.C. Cir. 2010) (quoting Rockwell Int'l Corp. v. U.S. Dep't of Justice , 235 F.3d 598, 605 (D.C. Cir. 2001) ). In determining whether disclosure is inconsistent with maintaining the secrecy of the communication, the Court of Appeals concluded, jurists must examine "whether the disclosing party had a reasonable basis for believing that the recipient would keep the disclosed material confidential." Deloitte , 610 F.3d at 141. The Deloitte Court considered whether Dow Chemical Company's disclosure of attorney work product to Dow's independent auditor waived the work product protection. Applying the above-recited standard, the court noted that a reasonable expectation of confidentiality "may be rooted in a confidentiality agreement or similar arrangement between the disclosing party and the recipient." Id. Moreover, where the relationship between the disclosing party and the third party is governed by rules of professional conduct that entail a duty of confidentiality, it is reasonable to expect that the third party will maintain secrecy. Id. at 142.[3]
In the particular context of disclosures to public relations consultants, the United States District Court for the Southern District of New York has reasoned that, while public relations advice is not itself subject to work product protection:
[i]t does not follow, however, that an otherwise valid assertion of work-product protection is waived with respect to an attorney's own work-product simply because the attorney provides the work-product to a public relations consultant whom he has hired and who maintains the attorney's work-product in confidence.
*992 This is especially so if ... the public relations firm needs to know the attorney's strategy in order to advise as to public relations, and the public relations impact bears, in turn, on the attorney's own strategizing as to whether or not to take a contemplated step in the litigation itself and, if so, in what form.
Calvin Klein Trademark Trust v. Wachner , 198 F.R.D. 53, 55 (S.D.N.Y. 2000) (internal citations omitted). In Wachner , the trust's attorney had retained the public relations firm that was providing consulting services for the trust. Such an engagement presents a factual circumstance that is lacking in the instant case, yet this distinction itself is not dispositive. Rather, in determining whether work product protection has been waived, the third-party recipient's employment status is less important than the question of whether there exists a "reasonable basis for believing that the recipient would keep the disclosed material confidential." See Deloitte , 610 F.3d at 141 ; In re Copper Market , 200 F.R.D. 213, 221 n.6 (S.D.N.Y. 2001) (noting that, even if public relations firm was not the functional equivalent of the client's employee, disclosure did not result in waiver of the work product protection because the disclosure did not substantially increase the possibility that an adversary would obtain the information). By contrast, in the context of the attorney-client privilege, the employment status of a third party can become the central consideration, because, where the client is a corporation, the privilege extends to agents or employees of the client authorized to act on the corporation's behalf. See Maj. Op. at 983; Yocabet v. UPMC Presbyterian , 119 A.3d 1012, 1027 (Pa. Super. 2015).[4]
When performing a waiver analysis, it is imperative to keep in mind that "[e]ffective trial preparation often entails disclosing work product to coparties and nonparties." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS , § 91 cmt. b. This is consistent with the work product doctrine's purpose "to protect information against opposing parties, rather than against all others outside a particular confidential relationship." AT & T , 642 F.2d at 1299. Waiver "follows only where disclosure is inconsistent with the objectives of the immunity." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS , § 91 cmt. c. Where the disclosing party takes sufficient affirmative steps to maintain the work product's confidentiality, whether through a confidentiality agreement, similar arrangement, or other adequate assurances, such that the disclosing party has a reasonable basis to believe that the receiving party will keep the communication confidential, waiver need not result.
In order to zealously represent their clients, attorneys may be required to disclose work product to third parties. The approach adopted today allows for such disclosures so long as work product is not "shared with an adversary, or disclosed in a manner which significantly increases the likelihood that an adversary or anticipated adversary will obtain it." Maj. Op. at 978. Despite the fact-intensive, post-hoc evaluations that such a formula requires, a less forgiving waiver analysis, especially one that would approach the strict rule applicable to waiver of attorney-client privilege, might have a chilling effect on an attorney's ability to disclose work product to third parties, thus undermining the primary *993 aim of the doctrine-to provide an attorney with a zone of privacy within which effectively to represent the client. See Jeff A. Anderson et al., The Work Product Doctrine , 68 CORNELL L. REV. 760, 891-93 (Aug. 1983).
The contours of the rule adopted by today's Majority surely will be shaped further by decisions of this Court and our intermediate appellate tribunals in future controversies. In those fact-intensive contexts, courts should respect and adhere to the protective purpose underlying the work product doctrine while remaining mindful as well of circumstances where a party has waived such protection.

The Majority indicates that the purpose of the work product doctrine is to "protect the mental impressions and processes of an attorney acting on behalf of a client, regardless of whether the work product was prepared in anticipation of litigation." Majority Op. at 976. I take issue with this statement of the law in two respects. First, it is dicta, as our grant of allocatur with respect to the work product doctrine was limited to the issue of its waiver, not its scope. BouSamra. v. Excela Health , 645 Pa. 340, 179 A.3d 1079 (2018) (per curiam). Contrary to the Majority's contention, it is unnecessary to define the scope of the work product doctrine in order to delineate a waiver test for whatever materials are deemed to be immune from discovery pursuant to said doctrine. The present case provides a clear example of this point, as we have identified a waiver test without any consideration of whether the materials in question constitute, or do not constitute, attorney work product. To the contrary, our grant of allocatur presumed that the documents at issue were otherwise (i.e., absent waiver) protected by the work product doctrine. In its Opinion the Majority makes the same presumption, as it merely announces that the documents are attorney work product without any disclosure of the nature or contents of those documents (including whether or not they were prepared in anticipation of litigation). See Majority Op. at 978 n.8. As such, the Majority's contention that we should not "declare the work product protection waived without first determining its applicability to the facts," id. at 976 n.5, is simply untrue, as there are no "facts" in this case upon which to do so. In sum, the Majority's discussion of the scope of the doctrine sheds no light on the issue of waiver of the doctrine's protections.
Second, the Majority expands the work product doctrine's protections outside of the litigation context, such that any "mental impressions and processes of an attorney acting on behalf of a client," are protected without regard to whether counsel's actions were undertaken in anticipation of (or in connection with) litigation. Majority Op. at 976. While this Court has never issued a definitive statement regarding the scope of the attorney work product doctrine, on those occasions when we have commented on its breadth, this Court has consistently reflected that it applies in connection with efforts to defend clients against adversaries in litigation. See, e.g. , Commonwealth v. Kennedy , 583 Pa. 208, 876 A.3d 939, 948 (2005) (emphasis added) (indicating that the work product doctrine "promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients") (quoting Westinghouse Electric Corporation v. Republic of the Philippines , 951 F.2d 1414, 1428 (3d Cir. 1991) ); Lepley v. Lycoming County Court of Common Pleas , 481 Pa. 565, 393 A.2d 306, 310 (1978) ("At its core, the work-product doctrine shelters the mental impressions of the attorney, providing a privileged area within which he can analyze and prepare his client's case .") (emphasis added) (quoting United States v. Nobles , 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) ). Similarly, we have indicated that the doctrine protects "the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation ." Commonwealth v. Williams , 624 Pa. 405, 86 A.3d 771, 59 n.16 (2014) (quoting Westinghouse , 951 F.2d at 1428 ).
In expanding the scope of the attorney work product doctrine well beyond the bounds recognized by this Court to date, the Majority relies exclusively upon two cases from our intermediate appellate courts to conclude that the "in anticipation of litigation" language in Rule 4003.3 is inclusive rather than exclusive. Majority Op. at ---- n.6 (citing In re Estate of Paterno v. NCAA , 168 A.3d 187 (Pa. Super. 2017) and Bagwell v. Pa. Dept. of Educ. , 103 A.3d 409 (Pa. Commw. 2014) ). As explained herein, there is good reason to question the correctness of these decisions, and without advocacy and a careful and detailed analysis by this Court, I am unwilling to unreflexively adopt their conclusions in dicta here. These two cases rely upon a questionable distinction between federal and Pennsylvania procedural rules, a difference that this Court has not recognized. In Paterno , for example, the court noted that while Rule 26(b)(3)(A) of the Federal Rules of Civil Procedure states that a party may not discover documents and tangible things "prepared in anticipation of litigation," Pennsylvania's Rule 4003.3 "does not similarly cabin Pennsylvania's work product privilege." Paterno , 168 A.3d at 200. When this Court adopted Rule 4003.3 in 1978, however, we did not recognize any intent to differentiate our rule from its federal counterpart in this manner. To the contrary, the explanatory comment recognizes just two distinctions from its federal counterpart: the federal rule permits discovery of work product only upon a showing of substantial need, and our rule distinguishes between the protections afforded to the attorney and to a party' representative. Pa.R.C.P. 4003.3 Explanatory Comment - 1978. Accordingly, the explanatory note does not acknowledge the distinction from federal law that the Superior Court attempted to draw in Paterno .

Subsection (2) of section 87 further defines "work product" as consisting of two distinct types, "opinion work product" and "ordinary work product."
(2) Opinion work product consists of the opinions or mental impressions of a lawyer; all other work product is ordinary work product.
Restatement § 87(2) (2000). The present case clearly involved opinion work product. Subsection 91 of the Restatement, however, does not distinguish between these two types of work product when discussing possible waivers of work product immunity.

Respectfully, the emphasis on Fedele's actions does not, as the Majority contends, focus too heavily on the confidentiality of the documents or otherwise conflate the standards of confidentiality between the work product and attorney-client doctrines. Majority Op. at 979 n.9. To the contrary, it is the sin qua non of the waiver test that the Majority announces today. It should be self-evident that a test measuring whether information was "disclosed in a manner which significantly increases the likelihood that an adversary or potential adversary will obtain it" requires a principal (if not exclusive) focus on the manner of disclosure - namely, a careful analysis of the manner in which the work product was disclosed to third parties, including what precautions (if any) were taken to safeguard against the possibility that the information could fall into the hands of an adversary.
Also, I cannot agree with the generality of the Majority's contention that courts in other jurisdictions have held that "depending upon the facts of a given case," disclosing parties may have a reasonable basis to trust that the receiving party will not disseminate the material to others (even without instructions or a confidentiality agreement). Id. In the only case cited by the Majority, United States v. Deloitte LLP , 610 F.3d 129 (D.C. Cir. 2010), the federal court of appeals there identified only one such "given case," specifically a circumstance in which the disclosing party and the recipient party have "common litigation interests." Id. at 141. According to the D.C. circuit court, "when common litigation interests are present, 'the transferee is not at all likely to disclose the work product material to the adversary.' " Id. (quoting United States v. AT & T , 642 F.2d 1285, 1299 (D.C. Cir. 1980) ). That court has defined "common litigation interests" to include those situations in which "transferor and transferee anticipate litigation against a common adversary on the same issue or issues." AT & T , 642 F.2d at 1300. No such situation would appear to be presented here, unless subsequent fact-finding discloses that Jarrard expected to be BouSamra's adversary in any future litigation related to the dispute between BouSamra and Excela.

On the issue of attorney-client privilege, the Majority concludes, and I agree, that Jarrad was not the functional equivalent of an Excela employee. Although this is relevant to and dispositive of the Majority's holding that Fedele waived Excela's attorney-client privilege by forwarding to Jarrad the email that Fedele received from outside counsel, this conclusion does not result automatically in waiver of the attorney work product protection.